610 A.2d 454

Glenda C. WALTON, As Administratrix of the Estate of Dennis Earl McCracken and Glenda D. McCracken and Dana Marie McCracken, Minors, by Glenda C. Walton, their Parent and Natural Guardian

v.

AVCO CORPORATION and Summa Corporation.

Maeburl TINCHER, As Administratrix of the Estate of Billy James Tincher and James Barry Tincher, Larry Bill Tincher, Kristie Leann Tincher, and Gregory Wayne Tincher, Minors, by Maeburl Tincher, their Parent and Natural Guardian and Maeburl Tincher In Her Own Right

v.

AVCO CORPORATION and Summa Corporation.

Appeal of AVCO CORPORATION, at No. 138 and Summa Corporation, at 139, Appellants.

Glenda C. WALTON, as Administratrix of the Estate of Dennis Earl McCracken and Glenda D. McCracken and Dana Marie McCracken, Minors, by Glenda C. Walton, their Parent and Natural Guardian, Appellants,

v.

AVCO CORPORATION and Summa Corporation.

Maeburl TINCHER, As Administratrix of the Estate of Billy James Tincher and James Barry Tincher, Larry Bill Tincher, Kristie Leann Tincher, and Gregory Wayne Tincher, Their Parent and Natural Guardian and Maeburl Tincher In Her Own Right, Appellants,

v.

AVCO CORPORATION and Summa Corporation.

Appeal of Maeburl TINCHER, et al., and Glenda C. Walton, et al., at No. 140.

Supreme Court of Pennsylvania.

Argued April 6, 1990.

Decided May 22, 1992.

Brenda M. Flock, Anne C. Elwood and James J. Bee, Philadelphia, for Avco Corp.

Craig Smith, Newtown, for Maeburl Tincher, et al., and Glenda C. Walton, et al.

J. Bruce McKissock, Philadelphia, for Summa Corp.

W. Scott Campbell and John Edward Wall, Pittsburgh, for amicus, Pa. Defense Institute.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

The instant matter relates to cross-appeals that have been filed from an Order of the Superior Court which affirmed in part and reversed in part the Orders of the Court of Common Pleas of Philadelphia County and remanded these cases for further proceeding consistent with its opinion. The instant issues arise from the following factual matrix.

On September 1, 1978, Dennis Earl McCracken was piloting a helicopter near Robbinsville, North Carolina. McCracken was ferrying a passenger, Billy James Tincher, who was an employee of Phillips and Jordan, Inc., the owner of the helicopter, manufactured and sold by Hughes Helicopter, Inc., a division of the appellant, Summa Corporation. Hughes had incorporated an engine manufactured by the Avco Corporation into the helicopter. Both McCracken and Tincher lost their lives when the engine in the helicopter seized in mid-flight, causing the aircraft to crash. A subsequent investigation revealed that the accident had

occurred due to the failure of an oil pump which was a component of the engine manufactured by Avco.

In November of 1980, complaints were filed against both Avco and Summa, (hereinafter "Hughes"), by Glenda C. Walton, as Administratrix of the Estate of Dennis Earl McCracken and his wife, Glenda D. McCracken, (hereinafter "Waltons"), and by Maeburl Tincher, as Administratrix of the estate of Billie James Tincher, (hereinafter "Tinchers"). Avco filed answers to both complaints, which answers contained cross-claims against Hughes for indemnity and/or contribution should any award be made in favor of plaintiffs. The two cases were consolidated for purposes of discovery and trial.

There is no dispute in the present case concerning the claim by the Waltons and the Tinchers, and the subsequent jury finding, that the engine manufactured by Avco was a defective product under Section 402A of the Restatement (Second) Of Torts.[1] It is also undisputed that when Avco became aware of the defective construction of its engine, it issued Service Instruction 1341 on July 30, 1976. The service instruction advised of the specific defect in the Avco engine which eventually caused the crash of the McCracken helicopter, and detailed a procedure for correcting this specific defect. Avco listed the time for compliance with Service Instruction 1314 as the next overhaul of the aircraft. Hughes received the Service Instruction from Avco

---

1. 402A. Special Liability of Seller or Products for Physical Harm to User or Consumer.

    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

      (a) the seller is engaged in the business of selling such a product, and

      (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

      (a) the seller has exercised all possible care in the preparation and sale of his product, and

      (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

but unfortunately never forwarded it to Phillips and Jordan, Inc., or advised the authorized helicopter service centers about its contents. Phillips and Jordan, Inc., had the helicopter overhauled on September 14, 1977, thirteen-and-one-half months *after* Avco had issued Service Instruction 1341. The overhaul was performed by Executive Helicopters. Because Executive Helicopter had not been advised of Service Instruction 1341, the defect in this particular helicopter engine was not remedied.

Avco and the estates of the two victims negotiated a settlement of the consolidated cases. The *Walton* action was settled as to Avco for $922,355.00, and the *Tincher* action was settled as to Avco for $1,000.000.00. Releases were executed on June 4, 1984, and Avco filed amended answers pleading the releases. The *Walton* release and the *Tincher* release both specifically preserved Avco's right to seek contribution from Hughes.

Although the suits against Avco and Hughes were originally brought on a number of legal theories, the case was ultimately submitted to the jury on strict products liability theories alone. The jury, finding both Avco and Hughes strictly and primarily liable, awarded $891,203.00 to the Waltons and $415,902.00 to the Tinchers.

The jury found that the engine (manufactured by Avco) of the helicopter (manufactured by Hughes) was defective in design, and that such defect was a substantial contributing factor in causing the accident and the resulting deaths of the plaintiffs' decedents. The jury also determined that Hughes had failed to warn Phillips and Jordan, Inc., the owner of the helicopter, and Executive Helicopters, an authorized Hughes Service Center located in Atlanta who had performed an overhaul on the helicopter in September of 1977, of the engine's defective design. The jury determined that Hughes' failure to warn was an independent design defect and a substantial contributing factor to the accident and the resulting death.

The trial court awarded contribution to Avco against Hughes on a *pro rata* basis, in the amount of fifty percent

of the jury's award to the Walton case.[2] The Superior Court affirmed the award of contribution but reversed on the amount owed, holding that contribution should be made on a comparative fault basis. The case was remanded for a determination of the comparative percentages of damages attributable to both defendants.

The trial court denied Avco's requests for prejudgment interest and delay damages on the amount of contribution awarded Avco against Hughes. This denial was affirmed by the Superior Court.[3] The trial court held that Hughes was liable to the Waltons for delay damages for the period beginning with the filing of their Complaint and ending with the date of their settlement with Avco. The amount was to be calculated based on one-half (*i.e.*, Hughes' *pro rata* share) of the Walton's verdict. The Superior Court vacated this award in favor of reevaluation based on comparative causation.

Hughes' request for indemnification from Avco was denied by the trial court based on the jury's finding that both defendants were primarily liable to the plaintiffs. This denial was affirmed by the Superior Court.

The following issues are presented to this Court: (i) Whether Hughes, as an end-line manufacturer of helicopters, had an independent duty to warn of a defective component in an engine manufactured by Avco, which Hughes incorporated into its helicopter, where Hughes had been notified of the defect; (ii) Whether Avco, the engine manufacturer, is entitled to contribution from Hughes from the amount of Hughes' liability, as determined by the judgment of the jury, as a result of Avco's having settled with the plaintiff in an amount which exceeded Avco's portion of the judgment and, if so, whether Avco is entitled to prejudg-

2. It should be noted here that the Court of Common Pleas, on a post-trial motion, granted the Tinchers a new trial as to certain items of damages. The following discussion of issues relating to damages reflects this and, therefore, refers only to the *Walton* case.

3. Because we conclude that Avco is not entitled to contribution from Hughes for reasons set forth later in this opinion, this issue will not be addressed by this Court.

ment interest or delay damages from Hughes on the amount of contribution. Conversely, whether the plaintiffs are entitled to recover from Hughes its full share of liability, and, therefore, whether Hughes is entitled to obtain indemnification from the component manufacturer, Avco; (iii) Whether comparative negligence is properly introduced into a strict products liability action by requiring that the allocation of damages pursuant to section 402A of the Restatement (Second) Of Torts among the litigants be based on each litigant's "comparative causation" of plaintiff's injuries. We will address these issues *seriatim.*

### I.

■ First, we will address the issue of Hughes' duty and subsequent liability because its existence forms the basis for the other issues raised in these appeals. For the reasons that follow we conclude that Hughes did have an independent duty to warn, derived from its knowledge of the defect in the engine.

The analysis of Hughes' liability must begin with a discussion of the broad social policy that underlies a seller's liability as established by Section 402A of the Restatement (Second) of Torts.[4] Section 402A was adopted as the law of Pennsylvania by this Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). "This section imposes liability on the seller ... of a defective product regardless of the lack of proven negligence or the lack of contractual relation [sic] between the seller and the injured party." *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 30, 319 A.2d 903, 906 (1974). The social policy reflected in the imposition of the seller's liability is clear. When a product is released into the stream of commerce, it is the seller or manufacturer who is best able to shoulder the costs and to administer the risks involved. Having derived a benefit from engaging in business, they are particularly able to allocate the losses incurred through cost increases and insurance. This assignment of liability is what Professor Prosser referred to as

---

4. See, *supra,* note 1 for the text of the Section.

"social adjustment". W. Prosser, Law of Torts at 495 (4th ed. 1979).

The exigencies of our complex technologies required the development and adoption of strict liability when it became clear that the circumstances behind some injuries would make negligence practically impossible for an injured plaintiff to prove. See *Azzarello v. Black Brothers, Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). Section 402A, therefore, requires only proof that a product was sold in a defective condition unreasonably dangerous to the user or consumer, and that the defect was the proximate cause of plaintiff's injuries. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). The 402A burden for proving that a product sold was "unreasonably dangerous" as to the user is met by proving both the defect and the causation. *Id.* It has long been the law in Pennsylvania that a "defective condition" includes the lack of adequate warnings or instructions required for a product's safe use. *Id.; See Jacobini v. V & O Press Company*, 527 Pa. 32, 588 A.2d 476 (1991); *Thomas v. Arvon Products Co.*, 424 Pa. 365, 227 A.2d 897 (1967). In *Berkebile*, a Pennsylvania case involving the strict liability of a helicopter manufacturer, this Court in its plurality opinion, wrote,

A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warnings and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts Section 402A, comment h. If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.... Where warnings or instructions are required to make a product non-defective, it is the duty of the manufacturer to provide such warnings in a form that will reach that ultimate consumer and

inform of the risks and inherent limits of the product. The duty to provide a non-defective product is non-delegable....

462 Pa. at 100–103, 337 A.2d at 902–903 (citations omitted). That Avco, and not Hughes, built the defective engine does not relieve Hughes of its duty to warn; Hughes' duty begins with its incorporation of the defective engine into the helicopter.

In *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 344, 237 A.2d 593, 599 (1968) this Court adopted Section 400 of the Restatement (Second) of Torts, which provides, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts, § 400. While this section traditionally has been applied to retailers engaged in the business of selling goods wholly manufactured by another company, the policy behind this imposition of liability calls for the same result when the seller of a product is also an assembler of its component parts, as the seller is, therefore, especially responsible for its defective condition when sold.

Hughes' liability stems not only from having incorporated a defective part into its helicopter, but also from its subsequent, undisputed knowledge of the defect. Hughes was informed by Avco of the defect in the oil pump and had received periodic service instructions or "bulletins" concerning recommended changes to the oil pump. Specifically, Avco's Service Instruction 1341, issued on July 30, 1976, addressed a tendency of the oil pump idler impeller shaft to "seize," and called for the drilling of an oil passage to assure that the shaft received lubrication sufficient to prevent this from happening. Avco recommended that its engines be so modified on their next overhaul.

Having been informed of this defect, Hughes was required to warn its service centers and, more importantly, those who purchased the affected helicopters. *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. at 101, 337 A.2d at 903 (1975). Section 402A specifically provides for the

protection of the "user or consumer" of defective products. Section 402A Restatement (Second) Of Torts § 402A. The responsibility to warn of known defects can not be satisfied merely by alerting participating service centers. Because of the likelihood that a purchaser will have a product serviced by its own technicians or by an unaffiliated service center, or possibly not serviced at all, sellers must make reasonable attempts to warn the user or consumer directly. *See Berkebile,* 462 Pa. 83, 337 A.2d 893 (1975); *Thomas v. Arvon Products Co.,* 424 Pa. 365, 227 A.2d 897 (1967).

In this case, Hughes made no attempt to warn Phillips and Jordan, Inc., the owner of the helicopters, nor its authorized service centers of the defect or its solution. As a result, when the engine was overhauled on September 14, 1977, the crucial modifications were not made.

As the Superior Court pointed out, the peculiarities of the industry also go far to support this imposition of responsibility. Helicopters are not "ordinary goods." By their nature they are not the types of objects that could get swept away in the currents of commerce, becoming impossible to track or difficult to locate. Helicopters are not mass-produced or mass-marketed products; to the contrary, they are sold in a small and distinct market. Additionally, establishments that service helicopters are convenient and logical points of contact. Even more important, in this case, the manufacturer of the crucial component part remained in contact with Hughes for the very purpose of keeping Hughes current on all pertinent information.

In view of the evidence presented to the jury, and intending to preserve and to promote the social policies behind 402A, we believe that it was entirely proper to impose strict liability on Hughes for its failure to warn of the known defect.

Having established Hughes' independent liability through its failure to warn, we can also dispose of its claim for indemnification from Avco. Hughes argues that it was entitled to indemnification from Avco because, it claims,

Pennsylvania law and the Federal Air Regulations [5] dictate that Avco had a non-delegable duty to provide complete and effective warnings, and that Hughes was justified in relying upon Avco to meet this responsibility. Appellant Hughes' Brief at 18. The common law right of indemnity was recently delineated by this Court in *Sirianni v. Nugent Brothers, Inc.*, 509 Pa. 564, 506 A.2d 868 (1986):

> "... [U]nlike comparative negligence and contribution, the common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor. Rather, it is a fault shifting mechanism, operable only when a defendant who has been liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant *who was actually responsible for the accident which occasioned the loss.*"

*Sirianni v. Nugent Brothers, Inc.*, 509 Pa. at 570–571, 506 A.2d at 871 (1986) (emphasis added). As this Court concluded, where a party seeks indemnity, the issue is whether that party "had any part in causing the injury." *Id.*, 509 Pa. at 571, 506 A.2d at 871 (1986) (emphasis in original).

Hughes attempts to dissuade us from the conclusion reached by the Superior Court, by labeling itself "secondarily" liable as per *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). As we said in *Builders Supply:*

> In the case of *concurrent* or *joint* tort-feasors, having no legal relation to one another, each of them owning the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other, in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.

366 Pa. at 328, 77 A.2d at 371 (emphasis in original).

"[I]ndemnity ... shifts the entire loss from one tort-feasor who has been compelled to pay it to the shoulders of

5. The specific sections raised by Hughes are 14 C.F.R. §§ 21.3, 21.99.

another who should bear it instead." W. Prosser, Law of Torts at 310 (4th ed. 1979) (emphasis added). Indemnification has also been employed to achieve equity between "primarily" and "secondarily" negligent tort-feasors. *See, e.g., Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983); *Burbage v. Boiler Engineering & Supply Company, Inc.,* 433 Pa. 319, 249 A.2d 563 (1969); *Pittsburgh Steel Company v. Patterson–Emerson–Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961). The relationship of the parties in this case, however, establishes concurrent primary liabilities and therefore precludes any right to indemnification. Neither defendant's liability was dependent upon, or a precursor to, the other's. The jury found them both liable for their own acts, independent of one another. For these reasons we believe that the Superior Court correctly ruled that Hughes is not entitled to indemnification.

## II.

The next issue to be addressed is the determination of whom Hughes owes its share of the damages. Avco has claimed a right of contribution under the Uniform Contribution Among Tort–Feasors Act, 42 Pa.C.S. 8321, *et seq.,* [UCATA]. Decedents' estates have argued, conversely, that they are entitled to Hughes' full *pro rata* share of the damage award.

A similar question was addressed by this Court in *Charles v. Giant Eagle,* 513 Pa. 474, 522 A.2d 1 (1987). Our conclusion there, that the "non-settling tort-feasor [remains] liable for his full proportionate share" of the damage award regardless of the amount paid by settling defendant, is controlling in this case. *Id.,* 513 Pa. at 479, 522 A.2d at 3.

In an opinion that crystallized the importance of encouraging settlements and stressed the necessity of respecting their finality, we said that it would be a "disservice to a supportive settlement policy to provide a windfall to a non-settling tort-feasor where the settlement proves to be more generous than the subsequent verdict.... The actual

amount of the release ... is of no consequence in the satisfaction of the judgment of the remaining defendants." *Id.*, 513 Pa. at 477–79, 522 A.2d at 3 (1987).

It is clear that *Giant Eagle* mandates recovery by the plaintiffs in this case. We remain committed to promoting the policies that fueled our decision in that case. As we said in *Giant Eagle:*

[C]oncern over a windfall to the plaintiff, if appellee were to be required to pay its full pro-rate share, is far overshadowed by the injustice of the result they urge. In addition to the erosion such a position would have upon a policy encouraging settlements, it is also bottomed on a fundamentally flawed premise. It assumes that the jury verdict more accurately measures the tort-feasor's obligation than that which is agreed upon between the parties by way of settlement. Such an assumption is without foundation either in reason or experience. There is no basis for concluding the jury verdict must serve as a cap on the total recovery that a plaintiff may receive.

*Id.*, 513 Pa. at 478, 522 A.2d at 3.

While this result alone necessarily precludes a recovery in contribution by Avco under UCATA (Hughes cannot be made to pay its share twice), we are compelled to note another important factor barring that recovery for Avco.

The right to contribution asserted is derived from the Uniform Contribution Among Tort–Feasors Act, 42 Pa.C.S. § 8321 *et seq.* which provides that a joint tort-feasor has a right of contribution against another joint tort-feasor where he has discharged the liability of the second joint tort-feasor or paid more than his *pro rata* share of liability and, thereby, extinguished the liability of the other joint tort-feasor. "The right to contribution is an equitable right based on a common liability to the plaintiff." *John W. Brown, Jr. v. Dickey Equipment Rental Corp.*, 397 Pa. 454, 155 A.2d 836 (1959). It was developed to prevent prejudice to settling joint tort-feasors and encourage settlement. Settlements are encouraged because they result in early receipt of funds by plaintiffs and reduced volume of

litigation. *See, Charles v. Giant Eagle,* 513 Pa. 474, 522 A.2d 1 (1987).

Crucial to consideration of this issue is the requirement that the liability of the non-settling joint tort-feasor be *extinguished* before a right to contribution arises. If, as we believe happened in this case, a settling defendant acts only to remove himself from the uncertainties of litigation, he may not then ask the non-settling defendant to "cover his losses" if, upon judgment, it turns out that he has made a bad business decision.

The releases entered into by Avco and the decedents' estates make no mention of Hughes' being similarly released. Avco cannot now claim that it intended to reserve a right to contribution that it did not have in the first place. Claiming to reserve a right will not operate to create a right. Merely by overpaying what turned out to be an amount in excess of its jury-determined liability, Avco cannot claim that it was actually intending to release Hughes as well. Hughes did not consent to any such action on its behalf, and it would be unjust to force such a relationship between the two parties. Avco took a gamble by settling, weighing the potential costs of litigating the claim against its settlement offer. It must now suffer the consequences of what hindsight proves to have been a bad bargain. We hold that the Superior Court misinterpreted this Court's decision in *Giant Eagle* and thereby erred in affirming the trial court's determination that Avco had a right to seek contribution from Hughes.[6]

### III.

The final issue to be resolved is a determination of the proper apportionment of damages between two strictly liable tortfeasors in order to determine what amount Hughes owes to the plaintiffs. Both the plaintiffs and Avco

---

6. At this juncture we reiterate the point that Avco's claim for prejudgment interest or delay damages on the amount of any contribution awarded Avco against Hughes pursuant to Rule 238 is rendered moot by our conclusion that Avco is not entitled to contribution.

argue that the Superior Court erred in holding that the principles of comparative fault should be employed in apportioning liability for damages between two strictly liable defendants, and claim instead that the apportionment should be made on a *pro rata* basis as held by the trial court.

We agree and conclude that the Superior Court's introduction of "comparative fault" in allocating the damage award between strictly liable defendants was erroneous. When this Court adopted Section 402A of the Restatement in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), we provided the citizens of this Commonwealth with an equitable avenue of recovery based on damage-causing defects without regard to fault. Manufacturers are held as guarantors upon a finding of defect and causation. *See, e.g., Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Berkebile v. Brantly Helicopters Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Salvador v. Atlantic Steel Boiler Co., et al.*, 457 Pa. 24, 319 A.2d 903 (1974); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

Presented with joint tort-feasors, both strictly liable, and a lump sum jury award, we must determine the allocation of damages between the two. The Superior Court's decision to remand for an allocation based on proportional fault was, it claims, "not affected by the theory of liability which the plaintiff has successfully established against each of the defendants at trial." *Walton v. Avco Corp.*, 383 Pa.Super. 518, 545–546, 557 A.2d 372, 386 (1989). That court based its decision on the policy that fault-apportionment between strictly liable defendants "will aid the law in its effort to bring safer products to our consumers." *Id.*, 383 Pa.Superior Ct. at 543, 557 A.2d at 385.

We recognize the merit in such a goal, as is clearly evinced by the decisions of this Court throughout the development of products liability law, but we cannot accept the Superior Court's rejection of the basis of liability as determinative in the allocation stage. In our attempts to place inevitable financial burdens on those best positioned to bear

them, we have continually protected the injured plaintiffs and held manufacturers responsible for the products they have put into the stream of commerce. The facts of this unfortunate case point out the undeniable necessity of "liability without fault." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975).

In a case such as this, *where neither defendant was found liable under the theory of negligence, we believe it is improper to introduce concepts of fault in the damage-apportionment process.* Each defendant was found wholly liable for having caused the death of the victims. Avco was liable for manufacturing the defective engine, and Hughes, for failing to warn the victims of the defect. It is impossible to determine that one was more liable than the other. Had the engine not had a defect, no crash would have resulted. Had Hughes put its knowledge into action, the defect would have been cured and the accident prevented.

This Court has continually fortified the theoretical dam between the notions of negligence and strict "no fault" liability. *See, e.g., Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). It would serve only to muddy the waters to introduce comparative fault into an action based solely on strict liability.

Accordingly, the order of the Superior Court is affirmed in part and reversed in part, and the matter is remanded to the trial court for proceedings consistent with this opinion.

PAPADAKOS, J., joins the majority opinion and also files a concurring opinion.

ZAPPALA, J., files a concurring and dissenting opinion.

PAPADAKOS, Justice, concurring.

I join the majority opinion because I believe it says the following:

I: The manufacturer of a defective component part which is placed in the stream of commerce and thereafter is the proximate cause of injury to the ultimate consumer is

strictly liable, and remains so even though notice of the defect is given to the assembler who fails to take corrective action.

II. The assembler of component parts, including the defective component part, who places into the stream of commerce the finished product, with knowledge of the existence of the defective component part, is strictly liable for any injuries proximately caused by that defective component part to the ultimate consumer.

III. As between and among strictly liable defendants, any defendant who has settled with plaintiffs prior to verdict has settled for its pro-rata share of the verdict and is not entitled to contribution from any other defendant found strictly liable, whether the verdict is for a greater or lesser amount than the settlement amount.

The non-settling strictly liable defendants are obligated to the plaintiffs for a pro-rata share of the verdict and are not entitled to contribution from the settling, strictly liable defendants.

In the matter before us, Walton keeps the $922,355.00 settlement funds received from AVCO and also receives $445,601.50, plus delay damages from Hughes. Tincher keeps the $1,000,000.00 settlement funds received from AVCO and also receives $207,951.00, plus delay damages from Hughes. This result is in keeping with our opinion in *Charles v. Giant Eagle*, 513 Pa. 474, 522 A.2d 1 (1987).

ZAPPALA, Justice, concurring and dissenting.

While I join in the majority's disposition of the issues set forth in Parts I and III of the opinion, I dissent from the majority's holding that the Superior Court erred in affirming the trial court's determination that Avco had a right to seek contribution from Hughes.

Avco and the plaintiffs executed a settlement agreement entitled, "Contingent Joint Tortfeasor Release and Indemnity Agreement". The release and indemnity agreement provided, in relevant part:

... It is further understood and agreed and it is the express intent of the parties to this agreement that this release shall not in any way affect the rights of Avco ... to pursue claims for contribution and/or indemnity arising out of the same accident against Summa Corporation and/or Executive Helicopters, Inc. of Atlanta, Georgia.

IT IS FURTHER UNDERSTOOD AND AGREED, however, that if it should be determined that any person, firm or corporation not being released by the terms of this release is jointly or severally liable to the claimants with any party herein released, in tort or otherwise, the claim against and damages recoverable from such other person, firm or corporation shall be reduced by the greater of the amounts determined as follows:

a. The amount of the consideration paid for this release; or

b. The amount determined by the sum of the pro-rata share of legal responsibility or legal liability for which the parties herein released are found to be liable as a consequence of the aforesaid accident of September 1, 1978.

The settlement figure of $922,355.00 in the Walton action exceeded the jury award of damages in the amount of $891,203.00 which was entered against both Avco and Hughes.

Consistent with the specific terms of the parties' release agreement, the trial court granted Avco's post-trial motion seeking contribution from Hughes and awarded Avco one-half of the jury verdict entered in favor of the Walton plaintiffs. On appeal to the Superior Court, the Walton plaintiffs complained that Avco was not entitled to receive any contribution from Hughes based upon this Court's decision in *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987).

In *Charles,* the issue was whether a non-settling tortfeasor is relieved of responsibility for payment of his proportionate share of damages to the extent that the consideration paid by a settling tortfeasor for a release from the plaintiff exceeds the settling tortfeasor's proportionate

share of damages as determined by the jury under the Comparative Negligence Act, 42 Pa.C.S. § 7102, and the Uniform Contribution Among Tortfeasors Act ("UCATA"), 42 Pa.C.S. § 8321 et seq. The majority held that the non-settling tortfeasor is required to pay his full pro rata share.

In *Charles,* the plaintiff had brought an action against Giant Eagle Markets, Inc. after he fell near an entrance to one of its stores. Giant Eagle joined Stanley Magic Door, Inc. as an additional defendant. Prior to trial, the plaintiff settled his claim against Giant Eagle for $22,500.00. A release executed by the plaintiff provided that any recovery obtained against a corporation other than Giant Eagle shall be reduced to the extent of the pro rata share of Giant Eagle.

The jury returned a verdict in favor of the plaintiff in the amount of $31,000.00. The jury found Giant Eagle was sixty percent negligent and Stanley to be forty percent negligent. Stanley paid $8,500.00 to Charles, taking the position that the verdict against it should be reduced by the amount by which Giant Eagle's payment to the plaintiff exceeded sixty percent of the verdict.

A majority of this Court concluded that Stanley was required to pay the plaintiff $12,400.00—the full amount of its forty percent share of the jury verdict to Charles. The majority stated that, "The responsibility of the settling tortfeasor should be finally resolved by the terms of the settlement." *Charles,* 513 Pa. at 479, 522 A.2d at 3. The majority concluded that its interpretation was supported by Section 8326 of the UCATA which states:

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa.C.S.A. § 8326. The majority held that § 8326 affords the parties to the release an option to determine the amount or proportion by which the total claim shall be reduced provided that the total claim is greater than the consideration paid.

In upholding Avco's right to seek contribution in this case from Hughes, the Superior Court relied upon the particular terms of the conditional release and indemnity agreement executed between Avco and the Walton plaintiffs. The Superior Court stated that, "In the final analysis, it is particularly difficult to accept the plaintiffs' claim to Hughes' share of the jury verdict because the plaintiffs' [sic] accepted and agreed to the clear terms of the release agreement they executed with Avco." *Walton v. Avco Corporation*, 383 Pa.Super. at 542, 557 A.2d at 385. The Superior Court found that its holding under the particular facts of this case furthered the policy considerations announced by the majority in *Charles*, reasoning that,

> The plaintiff is encouraged to settle in view of the fact that he will recover at least the amount of the jury verdict entered against the joint defendants and perhaps a greater amount where the release consideration exceeds the total jury verdict. The nonsettling defendant, where the settling defendant has preserved the right to seek contribution, has no incentive to allow the case to go to trial in hopes of securing a windfall at the settling defendant's expense. The settling defendant, who protected his contribution rights, has appropriately reached an agreement which is satisfactory to the plaintiff and has at the same time protected his own interests in a fair and reasonable manner.

383 Pa.Super. at 542, 557 A.2d at 384.

The Superior Court distinguished the release executed by the parties in the instant case from the *Charles* release, stating:

> Unlike the settling tortfeasor in *Charles*, the settling tortfeasor here, Avco, did not pay consideration to the plaintiffs to be released *unconditionally* from further

involvement in the lawsuit. On the contrary, Avco specifically provided in its release agreement with plaintiffs that its involvement in the lawsuit would continue in so far as Avco retained the right to seek contribution. Avco conditioned its payment of the settlement monies on the basis that if [sic] had overestimated its own liability to the plaintiffs, it could remedy this mistake by pursuing its contribution rights against other liable parties. The terms of Avco's release agreement controls Avco's right to seek contribution from Hughes. Our result in this regard is simply unaffected by the *Charles* decision where the parties to the settlement agreement had merely provided that the total claim would be reduced by Giant Eagle's pro rata share of the jury verdict.

383 Pa.Super. 518, 540–41, 557 A.2d 372, 384 (1989) (Emphasis supplied).

The Superior Court's analysis in this case was a valiant and erudite effort to apply the principles the majority appeared to support in *Charles*. Even though the *Charles* majority emphasized that the responsibility of the settling tortfeasor should be defined by the terms of the settlement agreement, it quickly abandoned that principle at this first opportunity to address the issue when the unambiguous terms of the agreement would permit a settling tortfeasor to seek contribution from the non-settling tortfeasor.

As I stated in my dissenting opinion, however, the majority in *Charles* rewrote the Uniform Contribution Among Tortfeasors Act so as to render it meaningless and obliterated the legislated right of contribution which exists among joint tortfeasors. The examples that I used to demonstrate the consequences of the *Charles* majority's analysis portended the harsh result that the majority now seeks to justify. Notably, the examples showed that in not one of the cases would the settling tortfeasor have a right to contribution.

Under the majority's analysis in this case, a contractual agreement may be disregarded as well. A right to contribution will never be upheld in a case involving a settlement

by one of the joint tortfeasors. Despite the explicit terms of the release agreed to by the Walton plaintiffs, no right to contribution can be enforced.

In perpetuating the analytical error made in *Charles*, the majority hides behind its "commitment to promoting the policies that fueled its decision" in that case. The majority stands by the policy of encouraging settlements, as if settlements would be discouraged by requiring plaintiffs to live up to their part of the bargain. In exchange for the payment of $922,355.00, the Walton plaintiffs agreed the claim against a non-settling tortfeasor would be reduced by the greater of (a) the amount of the consideration paid; or (b) the amount determined by the sum of the pro rata share of legal responsibility for which Avco was held liable.

I would enforce the terms of the release and indemnity agreement. Avco satisfied its obligation to pay the stated consideration for the release. So, too, should the Walton plaintiffs satisfy their obligation. I find that to be a social policy equally worth promoting.