## Rothermel v. Owen Illinois Inc.

*Edward P. Monaghan*, for plaintiff.
*Carol L. Widemon*, for defendant Owens-Illinois.
*Kimberly Woodie*, for defendant Manville Trust.

KLEIN, *J.*, July 8, 1992—Leland E. Rothermel developed asbestosis and lung cancer and died of a heart attack on October 7, 1988. The defense conceded that asbestos exposure was a substantial contributing factor to his lung cancer. Plaintiff's expert physician opined that the lung cancer was a substantial contributing factor to Mr. Rothermel's fatal heart attack.

The non-settling defendants raise three arguments in their post-verdict motions:

(1) They complain that the court erred in failing to reduce the verdict to 49 percent of what the jury found, since the court did allow the jury to make an apportionment of causation between cigarette smoking and asbestos exposure on a special interrogatory. The court took the

position that: (a) cancer is a single disease and there was not sufficient medical testimony to support an allocation; and (b) even if an allocation was to be made, the cigarette companies were not joined, there was no evidence of contributory negligence, and the asbestos defendants are liable for the full verdict under these circumstances. If they wish, they can file a contribution action against the cigarette manufacturers after they pay the verdict.

(2) The defendants differ as to whether each defendant should pay an equal share or the respective liability should be based on the jury's allocation among defendants. The jury allocation was based on Mr. Rothermel's testimony regarding differing exposure to the various products. The court initially held that under *Walton v. Avco Corp.,* 383 Pa. Super. 518, 544-47, 557 A.2d 372, 386-87 (1989), Pennsylvania law requires an equitable apportionment of respective fault among multiple defendants found strictly liable to the plaintiff. Since *Walton* has been reversed on this point by the Supreme Court, 530 Pa. 568, 610 A.2d 454 (1992), the verdict will be molded to reflect 20 percent liability for each of the five tortfeasors found responsible.

(3) The defendants claim a verdict of $250,000 for Mr. Rothermel and $40,000 for loss of consortium is excessive and a remittitur should be granted or a new trial granted on this basis. Considering that Mr. Rothermel first had asbestosis, then developed lung cancer, and finally died when the lung cancer contributed to a heart attack, this verdict does not shock the conscience. If anything, it is on the low side, considering the injuries.

(4)   With respect to delay damages, delay damages cannot run against the Manville Trust, since the Bankruptcy Act supersedes the state law.  The non-settled defendants are only liable for damages on their share of the verdict.  The new delay damage rule is constitutional, and the time is not tolled because of administrative delay occasioned by the backlog.

Defendant Manville Corp. Asbestos Disease Compensation Fund originally raised numerous other objections in its initial motions, but did not brief them and stated at oral argument that it was not pursuing them.

A detailed discussion follows.

## I.   APPORTIONMENT AND VERDICT REDUCTION

*There was no basis to apportion the lung cancer between cigarette smoking and asbestos, and even if there were, this would not reduce the verdict since there was no evidence of contributory negligence and the cigarette companies were not joined.*

A.   There was insufficient medical testimony to apportion the lung cancer between cigarette smoking and asbestos exposure.

The trial court must determine, as a matter of law, whether the harm is capable of apportionment.  *Voyles v. Corwin,* 295 Pa. Super 126, 130-31, 441 A.2d 381, 383 (1982).  In *Martin v. Owens Corning Fiberglas,* 515 Pa. 377, 381-85, 528 A.2d 947, 949-50 (1987), the Supreme Court rejected the Superior Court decision to allow apportionment when the jury could make a "rough approximation" of the allocation, saying, "'Rough ap-

proximation' is no substitute for justice." The Supreme Court pointed out that the burden of proving apportionment rests on the party seeking it, and the harm must be capable of apportionment. The court noted that there was a single harm, disability due to diminished lung function.

There is even less of a basis to make an apportionment in a lung cancer case than there is in a case where a plaintiff suffers from non-malignant asbestosis and cigarette caused emphysema or chronic bronchitis. Although they have an additive effect, asbestos exposure causes asbestosis, which is a restrictive disease; and cigarette smoking, causes emphysema or bronchitis, which are obstructive diseases. They are separate diseases and can be measured separately.

However, lung cancer is one, single, indivisible disease, although two processes (cigarette smoking and asbestos exposure) have a multiple effect in increasing risk. Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable or practical division. Restatement (Second) of Torts §433A(2) comment (i); *Corbett v. Weisband*, 380 Pa. Super. 292, 325-26, 551 A.2d 1059, 1076 (1988), *appeal denied*, 524 Pa. 607, 569 A.2d 1367 (1989), *appeal denied sub nom. Corbett v. DeMoura*, 524 Pa. 620, 571 A.2d 383 (1989), and *Petition of DeMoura*, 524 Pa. 620, 571 A.2d 383 (1989). No one yet knows how cancer is caused or why the combination of asbestos exposure and cigarette smoking increases the risk of lung cancer 50 times, far more than adding the two risks together. Since it is impossible, except upon a purely arbitrary basis for the purpose of accomplishing the result, to say that one factor caused

a certain percentage and another the rest, lung cancer is such a harm incapable of apportionment. The jury cannot be expected to draw conclusions which medical experts, relying on the same evidence, could not draw. *Martin* at 383-85, 528 A.2d at 950. It is a leap of faith to say that because cigarette smoking increases the risk of lung cancer ten fold and asbestos exposure five fold there should be a 2-1 allocation between the two. That is neither medically nor legally sound.

The medical testimony adds little to this scenario. Plaintiff's expert Dr. Stoloff said that it is hard to apportion two significant contributing factors in a synergistic disease. However, he noted that the cigarette smoking was less of a factor because Mr. Rothermel had cut down on his smoking prior to the cancer. The defense expert, Dr. Rodman, did not dispute the medical facts but merely referred to the relative statistical risks depending on whether someone smoked or not and whether someone was exposed to asbestos or not. He did not make a medical distinction, but said, "[a]pportionment appears to be more of a legal than a medical concept." Dr. Rodman, N.T. June 6, 1990, p.68. Since no one knows what causes lung cancer, to allow the jury to consider this question would require pure conjecture. A jury may not award damages based on speculation or conjecture. *Rice v. Hill*, 315 Pa. 166, 173, 172 A. 289, 291-92 (1934).

Defendants rely on *Parker v. Bell Asbestos Mines*, No. 86-1197, unpublished slip opinion (3rd Circuit, December 30, 1987), as precedent to allow the jury to apportion the damages. As a memorandum opinion specifically marked "not for publication," this decision has

no precedential value in Pennsylvania. *K.N. v. Cades,* 288 Pa. Super. 555, 432 A.2d 1010 (1981). The medical evidence in this case does not shed any light on how asbestos and cigarettes contribute to the causation of cancer. There is no medical evidence to explain how cigarette smoking and asbestos exposure combine to cause cancer. Any theories by the physicians are just theories and little more than a guess. These theories do not rise to the level of a medical opinion. Therefore, this court does not believe there is a basis for a jury to make an intelligent apportionment. To the extent that *Parker* differs from this view, this judge respectfully disagrees with the *Parker* court.

Because lung cancer is one disease rather than two separate diseases which can be medically measured separately, and because no one knows the process by which asbestos and cigarette smoking work together to cause lung cancer, or even the basic cause of lung cancer, apportionment is inappropriate.

B. Even were an apportionment made between asbestos exposure and smoking as a cause of lung cancer, that would not reduce the verdict because the cigarette companies were not joined.

No evidence was presented that Mr. Rothermel was negligent in any way because he smoked. The only evidence was that cigarette smoking helped cause the lung cancer. If negligence were raised, there would have been a great deal of testimony about efforts made to quit, effectiveness of cigarette warnings, the addictive properties of cigarettes, etc. None of this needed to be addressed, since no cigarette company was joined.

The mere fact that there is another joint tortfeasor who was not sued does not affect a verdict. The asbestos manufacturers do not argue that they are not partially at fault. They merely say they were only 49 percent at fault. However, that makes no difference. They had every opportunity to join the cigarette companies if they wanted to spread the liability. For practical reasons, they did not.

Suppose a passenger in car A is involved in an accident with car B. If the driver of car B is found negligent, he or she can only reduce the liability to the passenger for the negligence of the driver of car A if the driver of car A is sued and is brought into the case. That is the whole purpose of cross claims.

If the asbestos defendants at this late date want to spread the damages to the cigarette companies, the only way they can do this is to pay the verdict and sue the cigarette manufacturers for contribution. An "empty chair" defendant may exculpate the other tortfeasors totally if they show the "empty chair" defendant was solely liable. However, someone not sued cannot be considered a joint tortfeasor for purposes of reducing the verdict.

## II. IMPROPER TO APPORTION LIABILITY

*The Supreme Court has held it is improper to apportion liability among various asbestos manufacturers based on the plaintiff's relative exposure to their products.*

When first drafting this opinion, this section was written to affirm comparative fault among tortfeasors found strictly liable under section 402A of the Restatement of

Torts. In 1989, the Superior Court in *Walton v. Avco Corp.*, 383 Pa. Super. 518, 546-48, 557 A.2d 372, 387 (1989), held that "the trier of fact can employ a comparative causation doctrine when apportioning liability between two strictly liable defendants...."

However, over three years after the Superior Court filed its opinion, the Pennsylvania Supreme Court reversed *Walton v. Avco Corp.* on this point. *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992).

In rejecting "comparative fault" among section 402A defendants, the Supreme Court specifically recognized the merit in the Superior Court's logic that fault-apportionment "will aid the law in its effort to bring safer products to our consumers." It said that the purpose of strict liability was to place the financial burdens on those best able to bear them. It said there is a "theoretical dam" between notions of negligence and "no fault" liability, and it would "muddy the waters" to introduce comparative fault in strict liability cases. Whatever the reasoning, the holding is clear.

Although under *McMeekin v. Harry M. Stevens*, 365 Pa. Super. 580, 530 A.2d 462 (1987), *appeal denied sub nom. Harry M. Stevens Inc. v. Douglas Furniture Corp.*, 518 Pa. 618, 541 A.2d 746 (1988), and *McMeekin v. Harry M. Stevens Inc.*, 518 Pa. 619, 541 A.2d 746 (1988), there can be a non-equal distribution between those tortfeasors who were negligent and those who were strictly liable, allocation among the strictly liable defendants must be equal.

Although there was a reasonable basis for jury's allocation in the instant case, based on Mr. Rothermel's

recollection of the asbestos products to which he was exposed, the position taken by the Superior Court has been rejected.

Therefore, we now learn that the apportionment by the jury may not stand, and the verdict will be molded to reflect an equal share to each of the manufacturers whose products were found to be a significant contributing factor to Mr. Rothermel's asbestos-related disease.

Each non-settled defendant is therefore liable for 20 percent of the verdict of $250,000 and the consortium verdict of $40,000, or 20 percent of $290,000, which equals $58,000.

## III. VERDICT NOT EXCESSIVE

*The verdict of $250,000 for a lung cancer/death case and $40,000 for loss of consortium is not excessive, does not shock the conscience, and should stand.*

In Pennsylvania, the court should not interfere with a jury's assessment of damages unless it appears fraudulent, extreme or shocking to the court's sense of justice. *Gradel v. Inouve,* 491 Pa. 534, 547, 421 A.2d 674, 680-681 (1980); *Walasavage v. Marinelli,* 334 Pa. Super. 396, 409-410, 483 A.2d 509, 516 (1984). The testimony was sufficient to conclude that Mr. Rothermel had asbestosis and fear of cancer. Later his fear was realized when he contracted lung cancer. The cancer slowly and painfully led to his heart attack and death. Verdicts that are multiples of $290,000 in cases like this are not unusual and are allowed to stand.

Defendants seem to be focusing on two irrelevant areas in their request for remittitur. First, they say that cigarette

smoking is mostly to blame. However, even were that to be considered in an apportionment, that would have no effect on the total damages. Second, they say that the defense expert testified that the lung cancer was not a significant contributing factor to Mr. Rothermel's fatal heart attack. The problem with that argument is that the plaintiff expert, Dr. Stoloff, testified that, in his opinion, the lung cancer was a significant contributing factor to the heart attack. The jury was free to believe either expert.

The argument that the verdict was excessive has no merit.

## IV. DELAY DAMAGES

*Delay damages lie on the 20 percent share of the non-settled defendants; they do not lie on the 20 percent share of the Manville Trust.*

Each defendant is liable for delay damages on their proportionate share of the verdict. Since delay damages are akin to pre-judgment interest, they cannot be assessed against a bankrupt defendant such as the Manville Trust since the federal statute preempts Rule 238. There is no reason that the non-settled defendants should have to pay a share of delay damages of a defendant who is legally precluded from paying delay damages. Therefore, Owens-Illinois and Keene Corp. are jointly and severally liable for the delay damages as computed on their two 20 percent shares.

A. Delay damages should be computed on the 20 percent share of each non-settled defendant.

When there is a verdict against settled and non-settled defendants, the verdict must first be molded to reflect

the settlements. We now know that this means each non-settled defendant is liable for a one-fifth share of $290,000 or $58,000. Delay damages are computed on that share.

The Superior Court has held that delay damages are only computed on the basis of the molded verdict, and it is not equitable to award a plaintiff delay damages on money already received from the settling defendants. *Wirth v. Miller,* 398 Pa. Super. 244, 252-54, 580 A.2d 1154, 1159 (1990), *appeal granted,* 527 Pa. 637, 592 A.2d 1304 (1991), *Sherrill v. Port Authority of Allegheny County,* 383 Pa. Super 104, 123-124, 556 A.2d 450, 459-460 (1989); *Baciotti v. Simmons,* 346 Pa. Super 23, 498 A.2d 1351 (1985).

The court has been advised that Eagle Picher Industries Inc. and GAF have settled. There is no dispute that none of the other defendants made written offers of settlement. Likewise, there is no dispute over the mathematics.

The time period for delay damages is from April 10, 1987, to November 2, 1990. The prime rate plus 1 percent for the period was 8-1/2 percent for 1987; 9-3/4 percent for 1988; 11-1/2 for 1989; and 11-1/2 for 1990. Therefore, the amount due on the Keene Corp. and Owens-Illinois shares would be for each:

| | | |
|---|---|---|
| 1987 (265 days) | $58,000 x 8 1/2% x 265/365 | $ 3,579.31 |
| 1988 | $58,000 x 9⁻3/4% | $ 5,655.00 |
| 1989 | $58,000 x 11 1/2% | $ 6,670.00 |
| 1990 (306 days) | $50,000 x 11 1/2% x 306/365 | $ 5,591.83 |
| | TOTAL | $21,496.14 |

B. No delay damages are to be assessed against the Manville Trust.

As plaintiff concedes, under *Landenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1971), *appeal dismissed sub nom. Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982), and *Tindal v. SEPTA,* 385 Pa. Super. 94, 560 A.2d 183 (1989), delay damages are considered prejudgment interest to be added to a verdict.

The Manville Trust is a creature created by the Bankruptcy Court. By its terms, it is not permitted to pay interest. Under the Bankruptcy Law, any state law to the contrary (such as Rule 238) is superseded. See *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233, 243-244 (1971). This is also the result reached by Judge Katz in *Christman v. Manville Trust,* 22 Phila. Rep. 400 (1991), and Judge Moss in *Gallashaw v. Manville Corp. Asbestos Disease Compensation Fund,* C.P. of Philadelphia, December Term, 1980, No. 1208, filed October 15, 1990.

Since there are no delay damages assessed against the Manville Trust, there are no "Manville delay damages" to be reached by the plaintiff against Keene Corp. and Owens-Illinois. Therefore, joint and several liability is irrelevant to the "Manville delay damages."

C. Rule 238 is constitutional, and delay damages are appropriate even if administrative delay and a backlog contribute to the time lag before trial.

*Tindal v. SEPTA,* 385 Pa. Super. 94, 101, 560 A.2d 183, 187 (1989), affirms that there is no exclusion from

the period of delay damages for administrative concerns. *Tindal* affirms the constitutionality of the new act as being in line with the standards set in *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), as did *Craig II, Craig v. Magee Memorial Rehabilitation Center,* 400 Pa. Super. 126, 582 A.2d 1376 (1990), *appeal denied,* 529 Pa. 663, 604 A.2d 1030 (1992). The only exclusion from the period of delay damages is delay occasioned by the plaintiff. There was none proven in this case.

## ORDER

And now, July 8, 1992, upon consideration of defendants post-verdict motions, answers filed thereto, and argument held thereon it is hereby ordered and decreed that:

(1) in this case, it is improper to apportion responsibility between cigarette smoking and asbestos exposure, and the asbestos defendants are responsible for the entire verdict;

(2) the defendants are liable for equal shares;

(3) the verdict was not excessive;

(4) delay damages are due jointly and severally against the two non-bankrupt unsettled defendants, each being responsible for $21,496.14;

(5) delay damages cannot be assessed against the Manville Trust;

(6) any other issues raised by defendants in post-verdict motions are denied.