665 A.2d 1167

**Floyd PHILLIPS and Kathryn G. Phillips, his wife, Appellants,**

**v.**

**A–BEST PRODUCTS COMPANY, in its own right and as successor-in-interest to Asbestos Products Company; A.P. Green Refractories Company, Allegheny Sand, Inc., Allied Glove Corporation; Armstrong World Industries, Inc., in its own right and as successor-in-interest to Armstrong Cork Company and Armstrong Contracting and Supply Co.; The BOC Group, Inc. in its own right and as successor-in-interest to Airco Welding Products Co.; Carey–Canada, Inc., in its own right and as successor-in-interest to Carey Canadian Mines, Ltd. and Quebec Asbestos Corporation; The Celotex Corporation, in its own right and as successor-in-interest to The Philip Carey Manufacturing Com-**

pany, Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation, Combustion Engineering, Inc.; Dixon Ticonderoga Company, and its division New Castle Refractories Co.; Dresser Industries, Inc., and its division Harbison–Walker Refractories; Eagle–Picher Industries, Inc.; Foseco, Inc.; GAF Corporation, in its own right and as successor-in-interest to The Ruberoid Company; The Gage Company, formerly Pittsburgh Gage and Supply Co., General Refractories Company, H.K. Porter Company, Inc., in its own right and as successor-in-interest to Southern Textile Company, formerly Southern Asbestos Company, Hedman Mines, Ltd.; Insul Company, Inc.; J.H. France Refractories Company; Kaiser Aluminum & Chemical Corporation; and its division Kaiser Refractories, Keene Corporation, in its own right and as successor-in-interest to Baldwin Hill Co., Baldwin–Ehret–Hill, Inc., Ehret Magnesia Manufacturing Company, the Insulation Division of Mundet Cork Company, Mundet Company, and to Keene Building Products Corporation; The Lincoln Electric Company; New Jersey Pulverizing Company, Inc.; Nicolet, Inc.; in its own right and as successor-in-interest to Nicolet Industries, Inc., and to the Industrial Products Division of Keasbey & Mattison Co.; North American Refractories Company; Oglebay Norton Company, and its division, Ferro Engineering; Owens–Corning Fiberglas Corporation; Owens–Illinois, Inc.; Pennsylvania Glass Sand Corporation; Pittsburgh Corning Corporation; Quigley Company, Inc.; Raymark Industries, Inc., in its own right and as successor-in-interest to Raybestos–Manhattan, Inc.; Safety First Industries, Inc.; in its own right and as successor-in-interest to Safety First Supply, Inc.; The Sager Corporation, in its own right and as successor-in-interest to The Sager Glove Corporation; Set Products, Inc.; Theim Corporation, and its division, Universal Refractories; Turner & Newall, PLC, in its own right and as successor-in-interest to the Keasbey & Mattison Co.; TYK Refractories Company, in its own right and as successor-in-interest to Swank Refractories; Walter C. Best, Inc., and Westinghouse Electric Corporation, Appellees.

Supreme Court of Pennsylvania.

Argued March 7, 1995.

Decided Oct. 18, 1995.

Robert L. Jennings, Jr., Tybe A. Brett, Goldberg, Persky, Jennings & White, P.C., John M. Burkoff, Marcus & Shapira, Pittsburgh, for Appellants.

Michael J. Panichelli, Litvin, Blumberg, Matusow & Young, Philadelphia, for Amicus Curiae, Pennsylvania Trial Lawyers Association.

Joseph S.D. Christof, Dickie, McCamey & Chilcote, Pittsburgh, for Walter C. Best, Inc.

J.W. Montgomery, III, John D. Goetz, Jones, Day, Reavis & Pogue, Pittsburgh, for Pennsylvania Glass Sand Corporation.

Willis A. Siegfried, Patricia L. Dallacroce, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for Amicus Curiae, Chemical Manufacturers Association.

James M. Beck, Pepper, Hamilton & Scheetz, Philadelphia, for Amicus Curiae, Product Liability Advisory Council, Inc.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION OF THE COURT

CAPPY, Justice.

This is an appeal by allowance from the opinion and order of the Superior Court vacating the judgment entered by the Court of Common Pleas of Cambria County, and entering a judgement notwithstanding the verdict ("j.n.o.v.") for Pennsyl-

vania Glass Sand Corporation ("Appellee").[1] We granted review limited to the following two issues: first, whether the Superior Court erred in determining that Appellants' strict liability/failure-to-warn cause of action would not lie as a matter of law; second, whether the "sophisticated user" defense applied to this case. For reasons that differ from those relied upon by the Superior Court, we affirm.

Floyd Phillips ("Appellant–Husband") was employed as a foundry worker from 1951 to 1981 by United States Steel Corporation ("Employer–U.S. Steel"). Throughout his career, Appellant–Husband performed various tasks which brought him into contact with silica sand.[2] Employer–U.S. Steel purchased silica sand from several different vendors, one of which was Appellee.

A chest x-ray taken March 4, 1985 revealed that Appellant–Husband had contracted silicosis. In 1986, Appellant–Husband and his wife commenced suit based on both strict liability and negligence theories of recovery. Appellants' strict liability claim against Appellee asserted that Appellee was liable because it had failed to warn Appellant–Husband that exposure to silica sand could cause silicosis.

The jury returned a verdict in favor of Appellee on the negligence count, but afforded relief to Appellants on the strict liability claim. Appellee filed a motion for post-trial relief, requesting the entry of a j.n.o.v. on the strict liability count. This motion was denied and Appellee appealed.

The Superior Court vacated the order of the trial court and entered a j.n.o.v. in favor of Appellee. The Superior Court determined that Appellee could not be held liable on the strict liability claim as a matter of law, and gave two reasons to support its determination. First, the Superior Court decided

1. In both the trial court and the Superior Court, this matter was consolidated with another case, *Harmotta v. Walter C. Best, Inc., et al.* The *Harmotta* matter is not before this Court and thus it will not be discussed in this opinion.

2. The foundry industry employs silica sand in the production of molds from which steel castings are made. For more than half a century, exposure to silica sand has been linked with the development of silicosis, a disease which causes scarring of the lungs.

that silica sand was not an "unreasonably dangerous" product, and thus Appellee could not be held strictly liable as a matter of law. The Superior Court's second reason was that Appellee was shielded from liability by the negligence-based defense of § 388 of the Restatement (Second) of Torts, a defense which is commonly referred to as the "sophisticated user" defense.[3] The Superior Court noted that its application of § 388 to this matter was the first time that the defense had ever been applied to a § 402A case. Appellants appealed to this Court, and we granted allocatur.[4]

In reviewing this entry of a j.n.o.v., we note that [t]here are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor....

*Moure v. Raeuchle,* 529 Pa. 394, 402–403, 604 A.2d 1003, 1007 (1992) (citations omitted). In this instance, the Superior Court relied on the first basis and determined that Appellee was entitled to a j.n.o.v. as a matter of law. In examining this determination, our scope of review is plenary, as it is with any review of questions of law. *See Young v. Young,* 507 Pa. 40, 44, 488 A.2d 264, 265 (1985).

In this case, our first inquiry is whether the Superior Court correctly determined that Appellee, as a matter of law, cannot be held liable on the strict liability failure to warn claim. We

**3.** As the learned Judge Hudock noted in his concurring opinion below, such discussion of a possible defense for Appellee was dicta as the majority had already determined that Appellee could not be held strictly liable as a matter of law. *Phillips v. A.P. Green Refractories Co.,* 428 Pa.Super. 167, 186, 630 A.2d 874, 884 (1993) (concurring opinion).

**4.** We granted allocatur on two separate dates. We first granted allocatur on May 11, 1994, and limited review to the "sophisticated user" issue. Subsequently, we granted allocatur on March 8, 1995 to determine whether the Superior Court properly held that Appellee was not strictly liable as a matter of law.

conclude that the result reached by the Superior Court was correct, although our reasoning in support of this holding differs from that offered by the lower court.

■■■ Strict liability allows a plaintiff to recover where a product in "a defective condition unreasonably dangerous to the user or consumer" causes harm to the plaintiff. Section 402A, Restatement (Second) of Torts. *See also Webb v. Zern*, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966) (adopting § 402A). There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect. *Walton v. Avco Corp.*, 530 Pa. 568, 576, 610 A.2d 454, 458 (1992). Only the third type, the failure-to-warn defect, was alleged in this case. A product is defective due to a failure-to-warn where the product was "distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Mackowick v. Westinghouse Electric*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990).

■■■ As with the other two types of strict liability claims, a plaintiff raising a failure-to-warn claim must establish only two things: that the product was sold in a defective condition "unreasonably dangerous" to the user,[5] and that the defect caused plaintiff's injury. *Walton*, 530 Pa. at 576, 610 A.2d at 458. To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product "unreasonably dangerous." For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller. *See Sherk v. Daisy–Heddon*, 498 Pa. 594, 598 and 602, 450 A.2d 615, 617 and 619 (1982)

**5.** The determination of whether an alleged defect would render a product "unreasonably dangerous" is a question of law. *Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (Pa.1978). Thus, it is incumbent upon the trial judge to "decide whether, under plaintiff's averment of the facts, recovery would be justified" prior to submitting the case to the jury. *Id.*

(plurality opinion). If the plaintiff fails to establish either of these two elements, the plaintiff is barred from recovery as a matter of law.[6]

In this matter, Appellants failed to carry their burden: regardless of whether Appellee's silica sand was defective due to a lack of a warning, Appellants cannot recover because they have failed to establish causation.

 Appellants did attempt to establish that the alleged defect, Appellee's failure-to-warn, caused Appellant–Husband's injury. Appellants introduced the testimony of Appellant–Husband that he had never been told of the health hazards of silica sand, and did not know that he could injure his lungs due to exposure to silica dust. *See, e.g.,* R.R. at 464 and 466. Appellee introduced rebuttal evidence that Employer–U.S. Steel provided dust masks to its workers and also had an extensive employee training program to educate its workers about the dangers of silica sand. *See, e.g.,* 879, 1017–1019. Also, Appellee introduced into evidence that Appellant–Husband had stated during a deposition that he knew exposure to silica sand was harmful. *See, e.g.,* R.R. at 487–488. The jury found Appellee's version to be the more credible; it specifically determined that Appellant–Husband knew that he could contract silicosis by exposing himself to respirable silica dust, and voluntarily proceeded to expose himself to the product. *Special Verdict Form RE: Floyd Phillips,* R.R. at p. 1666. Thus, Appellants did not and cannot establish that Appellee's alleged failure to warn about the dangers of silica sand caused Appellant–Husband's silicosis because, as the jury found, Appellant–Husband knew of that risk about which the missing warning would have cautioned.

This holding is consistent with prior case law. In *Sherk v. Daisy–Heddon, supra,* plaintiff's decedent was killed when a friend of the decedent fired a BB gun at the decedent's head. Plaintiff alleged that the manufacturer should be held strictly liable because it had failed to warn the user of the dangers of

---

**6.** *See also Ayers v. Johnson & Johnson Baby Products Co.,* 117 Wash.2d 747, 818 P.2d 1337 (1992). In *Ayers,* our sister state of Washington provided an excellent analysis of the causation issue in the context of a strict liability failure-to-warn claim.

a BB gun. It was established at trial that the user actually knew of the dangers of the BB gun even absent the warning. Based on this actual knowledge of the danger on the part of the user, Mr. Justice Roberts, writing the opinion announcing the Judgment of the Court, reasoned that the manufacturer could not be held strictly liable since the alleged deficiency in the warnings was not the cause of the accident.[7]

Since we have resolved the first issue in favor of Appellee, we need not discuss the merits of importing the negligence-based "sophisticated user" defense embodied in § 388 of the Restatement (Second) of Torts into our strict liability law. To discuss whether Appellee would have a defense to a strict liability claim after we have decided that no strict liability action will lie would be to engage in mere *obiter dicta*. An analysis of whether a § 388 defense may be raised in a strict liability action must thus await a future case.

Accordingly, for the reasons stated herein, we affirm the disposition of the Superior Court.

7. We note that while we come to the same conclusion as was reached by the Superior Court, our reasoning differs from that offered by the lower court.

The Superior Court determined that Appellee's product was not in a defective condition unreasonably dangerous to the consumer. The court trained its analysis on the hazards and efficacy of silica sand *in general*. This was not the proper focus of the court's analysis. In a failure-to-warn claim, the allegation is not that the product in general is defective, but rather is that the product was defective because it lacked a warning to make it safe. Thus, the analysis here should have been on whether Appellee's product was defective *absent a warning*.

Although we do not approve of the Superior Court's analysis of whether Appellee's product was defective, neither do we mean to intimate that their ultimate conclusion on this issue was necessarily incorrect. We need not and do not here determine whether Appellee's product was indeed defective absent a warning; rather, our decision is based upon the determination that entry of a j.n.o.v. in Appellee's favor was appropriate because Appellant had failed, as a matter of law, to establish causation.

Finally, we emphasize that this opinion does not speak to the doctrine that the duty to warn is non-delegable. *See Walton*, 530 Pa. at 577, 610 A.2d at 459. Whether Appellee breached its duty to warn would be relevant to determining whether Appellee's product was defective absent a warning, an issue which is not addressed by this Court. Thus, this opinion does not abrogate or in any manner modify the non-delegability doctrine enunciated in *Walton*.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.