**[J-10A-2019 and J-10B-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| WILLIAM C. ROVERANO AND JACQUELINE ROVERANO, H/W, | : | No. 26 EAP 2018 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| Appellants | : | Court entered on December 28, 2017 |
| | : | at No. 2837 EDA 2016 affirming in |
| | : | part, reversing in part and remanding |
| v. | : | the Order entered on July 27, 2016 in |
| | : | the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| JOHN CRANE, INC. AND BRAND INSULATIONS, INC., | : | No. 1123 March Term, 2014. |
| | : | |
| | : | ARGUED:  March 6, 2019 |
| Appellees | : | |
| | | |
| WILLIAM ROVERANO, | : | No. 27 EAP 2018 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered on December 28, 2017 |
| | : | at No. 2847 EDA 2016 affirming in |
| v. | : | part, reversing in part and remanding |
| | : | the Order entered on July 27, 2016 in |
| | : | the Court of Common Pleas, |
| JOHN CRANE, INC., | : | Philadelphia County, Civil Division at |
| | : | No. 1123 March Term, 2014. |
| Appellee | : | |
| | : | ARGUED:  March 6, 2019 |

**OPINION**

**JUSTICE MUNDY**                                          **DECIDED:  February 19, 2020**

In this appeal by allowance, we consider whether the Fair Share Act, 42 Pa.C.S.

§ 7102, requires a factfinder to apportion liability on a percentage, as opposed to per

capita, basis in strict liability asbestos actions.  We conclude the Act's plain language is

consistent with per capita apportionment in asbestos cases, the Act does not specifically preempt Pennsylvania common law favoring per capita apportionment, and percentage apportionment in asbestos cases is impossible of execution. Accordingly, we reverse the Superior Court's order, which vacated the trial court's judgment and remanded this case for a new trial to apportion damages on a percentage basis. Additionally, we consider whether the Act requires a factfinder to apportion liability to bankrupt entities that entered into a release with the plaintiff. We conclude that upon appropriate requests and proofs, bankruptcy trusts that are either joined as third-party defendants or that have entered into a release with the plaintiff may be included on the verdict sheet for purposes of liability only. Accordingly, we remand this case to the trial court to consider whether Appellees submitted sufficient requests and proofs to apportion liability to the settled bankruptcy trusts.

I.

William Roverano was exposed to a variety of asbestos products from 1971 to 1981 in the course of his employment as a helper and a carpenter with PECO Energy Company. Additionally, he smoked cigarettes for approximately thirty years until 1997. In November 2013, Mr. Roverano was diagnosed with lung cancer in both lungs.

On March 10, 2014, Mr. Roverano brought a strict liability lawsuit against thirty defendants, including John Crane, Inc. (Crane) and Brand Insulations, Inc. (Brand), asserting that exposure to their asbestos products caused his lung cancer. His wife, Jacqueline Roverano, also advanced a loss of consortium claim. Additionally, on January 7, 2016, Crane filed a joinder complaint against Johns-Manville/Manville Personal Injury Trust.

Before trial, several defendants, including Crane and Brand, filed a motion in limine seeking a ruling that the Fair Share Act, 42 Pa.C.S. § 7102, applied to asbestos cases.

The defendants asserted the Fair Share Act required the jury to allocate liability to each defendant depending upon what percentage of the total harm to Mr. Roverano each asbestos product caused. The trial court denied the motion in limine, concluding that asbestos exposure cannot be quantified.[1] N.T., 4/5/16, at 10, 16. Instead, the trial court held it would apportion liability on a per capita basis, consistent with this Court's decision in *Baker v. AC&S*, 755 A.2d 664 (Pa. 2000). In its Pa.R.A.P. 1925(a) opinion, the trial court explained there was no evidence upon which the jury could apportion liability. Trial Ct. Op., 7/27/16, at 10 ("The plaintiff's testimony was clear and unequivocal that asbestos exposure from individual products cannot be quantified. The defendants presented no evidence to the contrary.").

On March 30, 2016, after discovery in the case had closed, Hajoca Corporation (Hajoca) filed a motion in limine seeking to, among other things, list on the verdict sheet the 14 asbestos bankruptcy trusts with which the Roveranos filed applications for compensation.[2] In its motion, Hajoca stated the issue was "whether [pursuant to Section 7102(a.2) of the Fair Share Act] bankrupt companies who have not yet paid the plaintiff compensation can still be listed on the verdict sheet for the sole purpose of an assessment by the jury of whether the bankrupt companies were a responsible share in the cause of the disease." Hajoca's Motion In Limine Regarding Plaintiffs' Bankruptcy

---

[1] The trial court indicated that it would permit Brand's liability expert to attempt to "quantify and kind of make sense for the jury what the percentage is." N.T., 4/5/16, at 15-16.

[2] Specifically, the 14 asbestos bankruptcy trusts that Hajoca identified were AC&S, Armstrong World Industries, Babcock & Wilcox, Celotex, Combustion Engineering, Fibreboard, G-I Holdings, Inc., Halliburton, H.K. Porter, Manville, Owens Corning, Porter Hayden, U.S. Gypsum, and W.R. Grace. The Roveranos did not name any of these entities as defendants in this lawsuit. By July 5, 2016, the Roveranos had recovered a total of $26,397.06 from the asbestos bankruptcy trusts of Armstrong World Industries, B&W, Celotex, Fibreboard, Manville, Owens-Corning, and U.S. Gypsum. *See* Roveranos' Br. in Opp'n to Brand's Mot. for Post-Trial Relief, 7/5/16, at 35, Ex. K.

Trust Applications, 3/30/16, R.R. 1248.  On April 4, 2016, the Roveranos filed a motion in limine to exclude from the verdict sheet third-party bankrupt entities with which the Roveranos had not settled and entered into a release.  On April 5, 2016, Brand filed a motion in limine to identify all settled parties, including bankrupt entities that had paid the Roveranos' claims.[3]  At the April 5, 2016 hearing on pretrial motions, the Roveranos' attorney stated that the Roveranos filed bankruptcy trust claims, but maintained the bankruptcy trusts were not settled entities.  N.T., 4/5/16, at 20.  The trial court granted the Roveranos' motion in limine, explaining the entities had filed for bankruptcy before the Roveranos commenced this lawsuit and including them on the verdict sheet would be unfair.  N.T., 4/5/16, at 19-20; Trial Ct. Op., 7/27/16, at 11 (relying on *Ottavio v. Fibreboard*, 617 A.2d 1296 (Pa. Super. 1992) (en banc), and *Ball v. Johns-Manville Corp.*, 625 A.2d 650 (Pa. Super. 1993)).

The same day the trial court granted the Roveranos' motion in limine, the seven-day jury trial in this matter commenced with Crane, Brand, and Hajoca remaining as defendants.  The Roveranos and Hajoca reached a settlement during trial, leaving Crane and Brand as the only non-settling defendants.  The evidence presented at trial focused on Mr. Roverano's exposure to Crane and Brand's asbestos products and the causal connection of that exposure to his lung cancer.  Crane and Brand's theory was that Mr. Roverano's history of smoking caused his lung cancer, and any exposure to their asbestos products was too insignificant to be a cause.  The Roveranos' experts opined that both smoking and the exposure to asbestos products caused his lung cancer.

Specifically, the Roveranos presented Dr. Arthur Frank, who was qualified as an occupational medicine expert specializing in asbestos-related diseases.  N.T., 4/7/16, at

---

[3] The trial court noted that all three defendants joined all motions and objections unless stated otherwise.  N.T., 4/5/16, at 8, 25.

19.  Dr. Frank explained that when asbestos fibers enter the lungs, they remain in the body for life, and they can cause a number of nonmalignant or malignant diseases.  *Id.* at 24, 32.  He contrasted asbestos with cigarette smoking, where the risk of developing lung cancer from cigarette smoking decreases with time after a person stops smoking.  *Id.* at 40.  Dr. Frank stated asbestos diseases are dose responsive, meaning that as the dose of asbestos increases so does the likelihood of disease.  *Id.* at 27.  In this regard, he noted that "the only safe level is zero.  And how much above zero has given rise to disease?  Actually very little."  *Id.*  Dr. Frank explained that to develop asbestosis, a nonmalignant scarring of the lungs, the dose of asbestos has to exceed a certain threshold; however, a person can develop cancer from asbestos exposures that do not cross the threshold necessary for asbestosis.  *Id.* at 28.

Dr. Frank noted that asbestos is a carcinogen that can cause lung cancer.  *Id.* at 31, 33.  Further, when a cigarette smoker is also exposed to asbestos, there is a "multiplicative or synergistic response" that greatly increases the possibility of getting lung cancer.  *Id.* at 36-39.  Based on his review of Mr. Roverano's case, Dr. Frank opined that Mr. Roverano's lung cancer was caused by the combination of his exposure to asbestos from 1971-81 at PECO and his history of cigarette smoking.  *Id.* at 58.  Dr. Frank concluded Mr. Roverano's exposure to Crane and Brand products were substantial contributing causes to his lung cancer because they were part of his "cumulative exposure."  *Id.* at 63, 67.  Dr. Frank explained the basis for his opinion:

> [T]here is scientifically or medically no exposures you can leave out that make up the cumulative exposure.  It is the totality of the exposure that comes from the variety of products that people are exposed to that give them their cancer and all of the exposures they have day after day end up increasing their risk and if they get the disease, you have to say it was in part causative of it.

*Id.* at 67. Additionally, Dr. Frank noted there is no scientific basis to determine which product caused the lung cancer:

> [T]he body doesn't know that it was a Hajoca product or Brand product or John Crane company or company X, Y, or Z. They don't come with little flags on them that say [the asbestos] comes from this company or that company. The body responds to asbestos because it's asbestos and all of the exposures have the same potential for causing disease.

*Id.* at 73. Accordingly, Dr. Frank concluded that each product that increased Mr. Roverano's exposure to asbestos contributed to his risk of developing lung cancer. *Id.* at 74.

Similarly, the Roveranos also presented the expert testimony of Dr. Jonathan Gelfand, a physician specializing in pulmonary disease. N.T., 4/5/16, at 6, 16-17. His opinion was that Mr. Roverano's exposure to each asbestos-containing product was a substantial contributing factor to his lung cancer. *Id.* at 25. Dr. Gelfand expressed uncertainty about the contribution of cigarette smoking because Mr. Roverano stopped smoking seventeen years before his lung cancer diagnosis. *Id.* at 26. Nonetheless, Dr. Gelfand stated his smoking history "may be a contributing factor[.]" *Id.* Regarding asbestos, Dr. Gelfand held a similar opinion to Dr. Frank, which was that asbestos-related diseases are cumulative "in the sense that each exposure to asbestos contributes to the total burden of asbestos that an individual will retain or keep throughout his life. Once asbestos fibers are held in the body, they never go away." *Id.* at 49-50. Further, Dr. Gelfand explained "you can't say which particular fiber from any particular day [caused lung cancer]. It is the total burden of exposure that is the cause and increases the risk of lung cancer." *Id.* at 50. Accordingly, Dr. Gelfand opined that the exposure to Crane and Brand products were substantial contributing factors to Mr. Roverano's lung cancer. *Id.* at 53-55.

In contrast, Brand relied on Dr. Alan Pope, an expert in pulmonary medicine and, specifically, the diagnosis of asbestos-related conditions. N.T., 4/7/16, at 13. He opined that asbestosis is a necessary prerequisite to attributing lung cancer to asbestos exposure. *Id.* at 31. However, Dr. Pope noted that in his physical examination of Mr. Roverano, he did not discover pleural plaques or asbestosis in Mr. Roverano's lungs. *Id.* at 15, 28. Based on this, his opinion was that Mr. Roverano's lung cancer was caused by cigarette smoking, not asbestos exposure. *Id.* at 30-31. On cross-examination, Dr. Pope acknowledged that asbestos diseases are dose responsive. *Id.* at 36. Further, Dr. Pope admitted that there is no way to determine which asbestos-containing product caused an asbestos-disease; instead, all the products combine to cause the disease. *Id.* at 38-39.

Likewise, Crane's expert, Dr. James Crapo, opined that to attribute lung cancer to asbestos, there must be objective signs of asbestos exposure, such as asbestosis. N.T., 4/2/16, at 61. Because Mr. Roverano did not exhibit those objective signs, Dr. Crapo's opinion was that cigarette smoking caused his lung cancer. *Id.* at 92, 95. Further, Dr. Crapo concluded that Crane's packing products had no role in contributing to Mr. Roverano's lung cancer because the exposure was too low. *Id.* at 95. On cross-examination, Dr. Crapo conceded that if a variety of asbestos products combined to cause a disease, the individual exposures cannot be separated, but nonetheless low-level exposures would not be a factor. *Id.* at 130; *see also id.* at 132 ("If they are all part of something he used substantially and contributed to the dose in a major way, then, no, I couldn't separate them out.").

Additionally, Brand and Crane each presented industrial hygienists.[4] Patrick Rafferty testified on behalf of Brand and opined that Brand's contribution to Mr. Roverano's asbestos exposure was within the range of background concentrations in the normal outdoor environment. *Id.* at 48. However, he acknowledged that he was not offering a medical causation opinion. *Id.* at 33. Dr. Frederick Toca, a Ph.D. in industrial hygiene and toxicology, opined that Mr. Roverano's exposure from Crane packing products would have been below the no effect level and would not have increased his risk of disease. N.T., 4/11/16, at 76. Instead, Dr. Toca concluded the asbestos-containing thermal insulating products combined with cigarette smoking were responsible for the increased risk of lung cancer. *Id.* at 77.

On April 13, 2016, the jury returned a verdict in favor of the Roveranos and against Crane, Brand, and six of the eight other defendants who had settled their claims.[5] The jury awarded a total of $5,189,265.14 to Mr. Roverano and $1,250,000.00 to Mrs. Roverano. Crane and Brand each filed post-trial motions. Relevant to this appeal, Crane and Brand argued that the Fair Share Act requires the jury to apportion liability on a percentage basis. Crane's Post-Trial Motion, 4/22/16, at 12-13; Brand's Post-Trial Motion, 4/25/16, at ¶ 19. Further, Crane and Brand maintained that the Manville Asbestos Trust should have been included on the verdict sheet because it was a joined defendant. Crane's Post-Trial Motion, 4/22/16, at 13-14; Brand's Post-Trial Motion, 4/25/16, at ¶ 20-21. Regarding the remaining bankruptcy trusts, Crane and Brand contended the trial

---

[4] Industrial hygiene is the "scientific field of recognizing, evaluating, and controlling exposures to workplace chemical, biological, and physical agents." N.T., 4/12/16, at 24.

[5] The jury also determined that the following six defendants, who had settled, had manufactured, distributed, or supplied asbestos products that were factual causes of Mr. Roverano's lung cancer: PECO, Delaval Pumps, Ingersoll Rand Compressors, Westinghouse Turbines, GE Turbines, and JJ White Mechanical Contractors. The jury found Georgia Pacific Cement and Hajoca, two defendants who also had settled, not liable.

court should mold the verdict to reflect a set-off for compensation Mr. Roverano had or will receive from those trusts. Crane's Post-Trial Motion, 4/22/16, at 5-6; Brand's Post-Trial Motion, 4/25/16, at ¶ 16. The trial court denied Crane and Brand's post-trial motions.

The trial court molded the verdicts, apportioning the judgment equally, i.e., on a per capita basis, among the eight defendants the jury found liable. Accordingly, the trial court entered judgments against Crane and Brand for $648,858.00 each, plus $29,604.00 in delay damages, on Mr. Roverano's claim; and an additional $156,250.00 each for Mrs. Roverano's loss of consortium. The amount assigned to each defendant represented 1/8th of the jury's lump sum damages award.

On appeal, the Superior Court affirmed in part, vacated the judgment, and remanded for a new trial on damages to apportion the jury verdict among Crane, Brand, the six settling defendants, and the bankrupt settling defendants.[6] Before addressing the issues, the Superior Court noted its standard of review for the denial of a motion for a new trial is a clear abuse of discretion or error of law, and its scope of review is plenary. *Roverano v. John Crane, Inc.*, 177 A.3d 892, 897 (Pa. Super. 2017) (citations omitted).

Relevant to this appeal, the Superior Court held that the Fair Share Act, 42 Pa.C.S. § 7102, applies to strict liability asbestos cases. *Id.* at 903. The Superior Court noted that statutory interpretation is a question of law, the standard of review is de novo, the scope of review is plenary, and it would apply the plain language of the statute unless it was ambiguous. *Id.* at 903-04. The court noted that in 2011, the legislature enacted the Fair Share Act to replace the Comparative Negligence Act, 42 Pa.C.S. § 7102(b) (deleted). The Superior Court indicated that the Fair Share Act abolished joint and several liability in most tort cases through the following provisions:

---

[6] Crane and Brand each filed timely appeals in the Superior Court, which the court addressed collectively.

## § 7102. Comparative negligence

**(a) General rule.**--In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

**(a.1) Recovery against joint defendant; contribution.**--

(1) Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).

(2) Except as set forth in paragraph (3), a defendant's liability shall be several and not joint, and the court shall enter a separate and several judgment in favor of the plaintiff and against each defendant for the apportioned amount of that defendant's liability.

(3) A defendant's liability in any of the following actions shall be joint and several, and the court shall enter a joint and several judgment in favor of the plaintiff and against the defendant for the total dollar amount awarded as damages:

(i) Intentional misrepresentation.

(ii) An intentional tort.

(iii) Where the defendant has been held liable for not less than 60% of the total liability apportioned to all parties.

(iv) A release or threatened release of a hazardous substance under section 702 of the

act of October 18, 1988 (P.L. 756, No. 108), known as the Hazardous Sites Cleanup Act.

(v) A civil action in which a defendant has violated section 497 of the act of April 12, 1951 (P.L. 90, No. 21), known as the Liquor Code.

(4) Where a defendant has been held jointly and severally liable under this subsection and discharges by payment more than that defendant's proportionate share of the total liability, that defendant is entitled to recover contribution from defendants who have paid less than their proportionate share. Further, in any case, any defendant may recover from any other person all or a portion of the damages assessed that defendant pursuant to the terms of a contractual agreement.

**(a.2) Apportionment of responsibility among certain nonparties and effect.**--For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party. A person whose liability may be determined pursuant to this section does not include an employer to the extent that the employer is granted immunity from liability or suit pursuant to the act of June 2, 1915 (P.L. 736, No. 338), known as the Workers' Compensation Act. An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose. Nothing in this section shall affect the admissibility or nonadmissibility of evidence regarding releases, settlements, offers to compromise or compromises as set forth in the Pennsylvania Rules of Evidence. Nothing in this section shall affect the rules of joinder of parties as set forth in the Pennsylvania Rules of Civil Procedure.

42 Pa.C.S. § 7102(a.1)-(a.2) (footnotes omitted).

The Superior Court observed that the predecessor to the Fair Share Act, the Comparative Negligence Act, directed the fact-finder to make a percentage determination

among joint tortfeasors, but did not cover strict liability.[7] *Roverano*, 177 A.3d at 905. Because the Comparative Negligence Act did not apply to strict liability, case law developed holding that liability among strictly liable joint tortfeasors was calculated on a per capita basis, i.e., each defendant was assigned the same percentage of damages without any inquiry into the amount its conduct contributed to the injury. *Id.* (citing *Baker*, 755 A.2d 664; *Walton v. Avco Corp.*, 610 A.2d 454 (Pa. 1992)).

The Superior Court found the plain language of the Fair Share Act expressly applies to strict liability and replaces per capita apportionment with percentage allocation. *Roverano*, 177 A.3d at 906. The court concluded the trial court erred in denying Crane and Brand's motion in limine to have the jury apportion each defendant's share of liability. *Id.* Instead, the Superior Court reasoned that the Act reflected the legislature's intent to allocate liability among strictly liable joint tortfeasors in the same manner as negligent joint tortfeasors, i.e., on a percentage basis. *Id.*

However, the Superior Court found the Fair Share Act was ambiguous regarding how to allocate liability in all tort cases, including strict liability cases. *Id.* at 906-07. The Superior Court reasoned that the structure and context of the Fair Share Act indicates that a factfinder should apportion liability in all cases. *Id.* at 908. The court quoted the legislative history to support its conclusion. *Id.* (quoting 2002 Pa. Leg. J. (House) 1199 (June 4, 2002) (indicating intent, under 2002 version of the Fair Share Act, to apportion

---

[7] Specifically, the Comparative Negligence Act provided:

> Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed[.]

42 Pa.C.S. § 7102(b) (deleted).

liability between strictly liable defendants and to eliminate per capita allocation)). Additionally, the Superior Court noted that to give effect to Section 7102(a.1)(3)(iii), which provides that a defendant who is more than 60% liable is also jointly and severally liable, per capita liability could not apply or else no strictly liable defendant would ever be more than 60% liable. *Id.* at 909. Therefore, the Superior Court concluded that the jury must apportion liability as to each defendant in strict liability cases according to their percentage of liability, and not on a per capita basis. Accordingly, the court remanded for a new trial on damages. *Id.*

Further, the Superior Court concluded that in the new trial on damages, the jury should consider evidence of any settlements the Roveranos obtained from bankrupt entities. *Id.* The Superior Court reasoned that Section 7102(a.2) does not contain an exception for bankrupt entities. *Id.* at 910 (quoting 42 Pa.C.S. § 7102(a.2) (providing liability shall be apportioned to "any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party")). The Superior Court rejected the Roveranos' reliance on *Ottavio* and *Ball*. *Id.* The court explained that *Ottavio* and *Ball* held that the automatic stay provision of the Federal Bankruptcy Code would be violated by including bankrupt companies, which would permit the other joint tortfeasors to seek contribution from the bankrupt companies. *Id.* The court noted that the Fair Share Act expressly prohibits another defendant from seeking joint contribution from a bankrupt company, and the Act states that an allocation finding is inadmissible in any other case. *Id.* at 910-11 (quoting 42 Pa.C.S. § 7102(a.2) (stating "an attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose")). The Superior Court held the concerns of *Ottavio* and *Ball* were not implicated in this case as the Act does not "expose the bankrupt company to any sort of claim forbidden by the Bankruptcy Code."

*Id.* at 911.  Thus, the court concluded the Act "does not conflict with the Code and is not preempted by it."  *Id.*; *see also id.* at 911 n.14 (noting the presumption against preemption).  The Superior Court remanded for a new trial on damages only for the jury to apportion the verdict among Crane, Brand, the other defendants on the verdict slip, and any bankrupt settling defendants.[8]  *Id.* at 911.

We granted the Roverano's petition for allowance of appeal to consider:

> (1) Whether, under this issue of first impression, the Superior Court misinterpreted the Fair Share Act 42 Pa.C.S. Sec. 7102 in holding that the Act requires the jury to apportion liability on a percentage basis as opposed to a per capita basis in this strict liability asbestos case[.]
>
> (2) Whether, under this issue of first impression, the Superior Court misinterpreted the Fair Share Act in holding that the Act requires the jury to consider evidence of any settlements by the plaintiffs with bankrupt entities in connection with the apportionment of liability amongst joint tortfeasors[.]

*Roverano v. John Crane, Inc.*, 190 A.3d 591 (Pa. 2018) (per curiam).  Because these issues require statutory interpretation, our standard of review is de novo, and our scope of review is plenary.  *See MERSCORP, Inc. v. Del. County*, 207 A.3d 855, 861 (Pa. 2019); *Oliver v. City of Pittsburgh*, 11 A.3d 960, 964 (Pa. 2011).

II.

When engaging in statutory construction, a court's duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions.  1 Pa.C.S. § 1921(a).  The best indication of legislative intent is the plain language of the statute.  *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 290-91 (Pa. 2018).  In

---

[8] Judge Solano filed a concurring and dissenting opinion in which he agreed with the majority's disposition of the Fair Share Act issues, but disagreed with the majority's conclusion regarding a factual cause jury instruction.  *Roverano*, 177 A.3d at 911 (Solano, J., concurring and dissenting).  This Court denied review of the jury instruction issue.

ascertaining the plain meaning, we consider the statutory language in context and give words and phrases their "common and approved usage." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1027 (Pa. 2018). When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective. *Id.*; 1 Pa.C.S. § 1921(b). "Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Millcreek Twp. Sch. Dist.*, 185 A.3d at 291; 1 Pa.C.S. § 1921(c).

III.

We first consider whether the Superior Court erred in construing the Fair Share Act to require the jury to apportion liability on a percentage basis in strict liability asbestos cases.

A.

The Roveranos argue that the language of the Act, which plainly applies to strict liability actions, states that in multi-defendant cases "each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned . . . ." *See* Roveranos' Brief at 19 (citing 42 Pa.C.S. § 7102(a.1)). However, they note that the Act does not explicitly provide how damages are to be apportioned, thereby leaving intact the traditional method of apportioning liability in strict liability cases on a per capita basis. *See id.* at 19-20, 22. To that end, they highlight Section 7102(c.2) which provides that "[n]othing in this section shall be construed in any way to create, abolish or modify a cause of action. . . ." *Id.* at 19. According to the Roveranos, Pennsylvania case law has unequivocally established that apportionment by fault is prohibited in strict liability cases. Therefore, without a clear statement to the contrary in the Act's text, the per capita scheme of apportioning liability

remains. *Id.* at 20. In support, they rely on this Court's decision in *Walton v. Avco Corp.*, 610 A.2d 454 (Pa. 1992). In *Walton,* this Court rejected the Superior Court's attempt to introduce comparative fault principles in the allocation of damages between two strictly liable defendants. *Walton,* 610 A.2d at 462. This Court emphasized that "we have continually protected the injured plaintiffs and held manufacturers responsible for the products they put into the stream of commerce." *Id.* We recognized the fundamental distinction between causes of action based on the legal theories of negligence and those based on strict liability. As such, we concluded in strict liability cases, "*where neither defendant was found liable under the theory of negligence, we believe it is improper to introduce concepts of fault in the damage-apportionment process.*" *Id.* (emphasis in original).

In response to the Superior Court's treatment of Section 7102(a.1)(3)(iii) of the Act,[9] which provides that a defendant's liability will be joint and severable "where the defendant has been held liable for not less than 60% of the total liability apportioned to all parties[,]" the Roveranos contend that the 60% threshold can apply only to negligence actions. They maintain that in strict liability cases, all defendants will only be severally liable. Roveranos' Brief at 22.

As a practical consideration, the Roveranos posit that a per capita apportionment scheme is particularly warranted in strict liability actions involving exposure to asbestos because an individual defendant's asbestos product is rarely used in isolation, and it is not possible to apportion fault in asbestos cases because the injury created is indivisible. *See id.* at 23-30. Accordingly, there is no reasonable basis for a jury to assess each

---

[9] As noted, [in Superior Court procedural history], the Superior Court concluded that under the Roveranos' interpretation, Section 7102(a.1)(3) would be "mathematically impossible" to apply, and thus inapplicable to strict liability cases. *Roverano,* 177 A.3d at 909. Because courts are to interpret a statute to give effect to all of its provisions, the Superior Court rejected a per capita allotment in strict liability cases.

defendant's percentage of fault. *Id.* at 24. They contend that their position has been well-recognized by case law involving strict liability and asbestos actions. *See id.* at 23-26 (relying on, *inter alia*, *Martin v. Owens-Corning Fiberglass*, 528 A.2d 947, 949 (Pa. 1985) (the trial court must determine whether, as a matter of law, the harm is capable of apportionment before submitting the issue to the jury); *Gross v. Johns-Manville Corp.*, 600 A.2d 558, 566 (Pa. Super. 1991) (evidence of warnings on asbestos product may be a defense to liability but "does not provide a basis upon which to apportion liability[]"); *Ball v. Johns-Manville*, 625 A.2d 650, 658-59 (Pa. Super. 1991) (apportionment based on fault is not permissible among strict liability defendants and, independently, also barred where there is no evidence on which the jury could base apportionment)). The Roveranos argue that the Superior Court decision effectively overruled the line of cases holding that apportionment in strict liability asbestos cases is inappropriate. Roveranos' Brief at 27. Moreover, they contend the medical expert testimony adduced at trial would not provide a reasonable basis on which to apportion liability. *Id.* at 27-30. Finally, they contend that the subsequent legislative history of the Act does not support the interpretation advanced by the Superior Court. *See id.* at 30-32. Specifically, the Roveranos point to two memoranda issued by Representative Mike Turzai and Representative Warren Kampf, respectively, to members of the House of Representatives that suggested proposed bills which would apply the principles of the Act to asbestos litigation. *Id.* at 31. They note that in 2017, Representative Kampf introduced House Bill 238, which addressed, in part, how to impose and apportion liability against asbestos-related bankruptcy trusts.[10] In

---

[10] HB-238 has not been enacted.

their view, enacting HB-238 would be superfluous if the Fair Share Act already applies to asbestos strict liability cases. *Id.* at 31-32.[11]

B.

Appellees argue that the plain language of the Act requires that liability be apportioned on a percentage basis in strict liability cases. Brand's Brief at 17; Crane's Brief at 20. They highlight that the General Assembly made clear that the Act's requirement on damages apportionment applies to actions "including actions for strict liability." Brand's Brief at 17 (citing 42 Pa.C.S. § 7102(a.1)(1)); Crane's Brief at 22. They argue the use of the term "ratio" in the Act's description of damages requires quantifying the amount of each defendant's liability. Brand's Brief at 19. Appellees contend that if liability is to be apportioned per capita, the amount of a defendant's liability would not need to be determined in the first instance, rendering Section 7102(a.1)(1) superfluous. *Id.* at 19-20; Crane's Brief at 25. They argue that their interpretation is consistent with the Act's adoption of several liability and the outlined exceptions. Brand's Brief at 20-21; Crane's Brief at 19.

While maintaining the plain language of the Act supports their interpretation, Appellees engage in an alternative statutory construction analysis. *See* 1 Pa.C.S. § 1921(a). Appellees posit that the legislative history, including remarks made by legislators during debate on the Act prior to its enactment, demonstrates that strict liability cases were to be apportioned based on percentage of fault under the Fair Share Act.

---

[11] The Pennsylvania Association for Justice and the American Association for Justice have filed an amici curiae brief in support of the Roveranos. Amici argue that Section 7102(a.1) is not ambiguous, but does not direct a specific method of apportionment. Accordingly, "[i]t does not preclude a finding that each defendant is equally liable for a plaintiff's injury." Amici Brief at 6. Here, because the experts agreed that the evidence could not support each defendant's contribution to the harm suffered by Mr. Roverano, amici contend the trial court appropriately removed the issue from the jury. *Id.* They reason that the jury should not be required to do "[w]hat the experts say cannot be done." *Id.*

*See* Brand's Brief at 25-28; Crane's Brief at 22. Looking at a prior version of the Act, known as the Comparative Negligence Act, Appellees note that Section 7102(b) required that apportionment of liability be "awarded as damages in the ratio of the amount of causal negligence attributed to all defendants against whom recovery is allowed." Crane's Brief at 16 (citing 42 Pa.C.S. § 7102(b) (deleted 2011)). However, the inclusion of the phrase "including actions for strict liability" was a deliberate change in the apportionment provision supporting Appellees' interpretation. *Id.* at 18-19.

Appellees dispute that the subsequent memoranda and unenacted proposed legislation cited by the Roveranos supports a pro rata apportionment in asbestos strict liability cases. In their view, the fact that the General Assembly did not enact the legislation is consistent with the notion that the Fair Share Act already provided for that manner of assessing liability. Moreover, they note that subsequent legislative history is not a reliable or appropriate source from which to glean legislative intent. *See* Brand's Brief at 27-28; Crane's Brief at 38-39.

Appellees respond to the Roveranos' position that case law on strict liability supports per capita apportionment by asserting that because the Act is part of a comprehensive scheme to allocate liability, it supersedes the common law that developed prior to its enactment. *See* Brand's Brief at 29-37. Specifically, they claim the precedent upon which the Roveranos rely is outdated and inapt in light of the Act. Brand's Brief at 35; Crane's Brief at 18-19. As further support, Appellees note that a number of other jurisdictions require liability to be apportioned in strict liability. *See* Brand's Brief at 32-35. This point is highlighted by an amici curiae brief filed by The Pennsylvania Chamber of Business and Industry along with a number of other organizations.[12] *See* Amici Curiae

---

[12] Specifically, the entities supporting Appellees in the amici curiae brief are the Pennsylvania Chambers of Business and Industry, Pennsylvania Manufacturers' Association, Insurance Federation of Pennsylvania, Pennsylvania Association of Mutual

Brief in favor of Appellees at 5-7. Appellees contend that the Act's allocation requirement is mandatory, and any perceived conflict between the Act and the prior case law should be resolved with the language of the Act taking precedence. *Id.* at 39; *see* Crane's Brief at 32. Finally, Appellees argue that there was sufficient evidence in this case for the jury to make a determination on apportioning liability.[13] Brand's Brief at 40-42; Crane's Brief at 32-34.

C.

We conclude that the Superior Court's interpretation of the Act as directing the jury to engage in percentage apportionment of liability in strict liability asbestos cases in the same manner it would in a negligence action is flawed.[14] Under the Statutory Construction Act, "an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded." *In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003) (quoting *Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commonwealth of Pa.*, 580 A.2d 300, 302 (Pa. 1990)). Our common law holds that "[i]n strict liability actions, liability

---

Insurance Companies, Pennsylvania Defense Institute, Philadelphia Association of Defense Counsel, Pennsylvania Coalition for Civil Justice Reform, Coalition for Litigation Justice, Inc., National Association for Manufacturers, American Tort Reform Association, Chamber of Commerce of the United States of America, American Insurance Association, and NFIB Small Business Legal Center. Amici agree with Appellees that the entire Act applies to strict liability actions, and there was sufficient evidence adduced to apportion liability on a pro rata basis. Amici Curiae Brief in favor of Appellees at 8-10.

[13] The Roveranos filed a reply brief in which they reiterate their position that the Act does not prohibit a trial court from apportioning liability on a per capita basis in strict liability asbestos cases. Reply Brief at 1. They continue to evaluate the evidence adduced at trial and contend it was legally insufficient to allow the jury to make a reasonable determination as to each defendant's contribution to the harm. *See id.* at 1-4.

[14] The Fair Share Act is an amendment to Section 7102 of the Judicial Code, while the strict liability cause of action is the result of our adoption of Section 402(A) of the Restatement (Second) of Torts and the common law that developed thereafter.

is indeed apportioned equally among joint tortfeasors." *Baker*, 755 A.2d at 669. This Court has rejected percentage apportionment in strict liability cases because "this tort theory does not contain an element of fault. This is in contrast to negligence actions where liability is allocated among joint tortfeasors according to percentages of comparative fault." *Id.* Because strict liability is "liability without fault," and each defendant is "wholly liable" for the harm, we have concluded "it is improper to introduce concepts of fault in the damage-apportionment process." *Walton*, 610 A.2d at 462 (explaining "[i]n our attempts to place inevitable financial burdens on those best positioned to bear them, we have continually protected the injured plaintiffs and held manufacturers responsible for the products they have put into the stream of commerce").

The plain language of the Fair Share Act does not "specifically preempt" our common law holding that damages in strict liability actions must be apportioned equally among defendants.[15] *See Rodriguez*, 900 A.2d at 344. Section 7102(a.1)(1) provides:

**(a.1) Recovery against joint defendant; contribution.**--

> (1) Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).

42 Pa.C.S. § 7102(a.1)(1).

The Superior Court determined that because the statute is silent as to how to calculate the ratio for all tort cases, including strict liability, the statute is ambiguous on the issue of calculating allocations. Further, the Superior Court concluded that because

---

[15] As discussed below, the Act in its savings clause expressly forbids an interpretation that the Act changed the strict liability cause of action.

Section 7102(a.1)(1) specifically incorporated strict liability joint tortfeasors in the same liability allocation section as negligent joint tortfeasors, the legislature intended for liability to be allocated in the same manner for both strict liability and negligence cases. 42 Pa.C.S. § 7101(a.1)(1). We disagree. While such inclusion reflects an intention to subject defendants deemed liable in both negligence cases and strict liability cases to apportionment on a several but not joint basis in accordance with the "ratio" of their liability to the whole of the damages, it does not follow that the determination of such ratio was intended to be upon the same basis for both types of cases.[16] Indeed, Section 7102(a.1)(1) nowhere defines or explains upon what basis a jury must determine the "proportion" or "ratio" of an individual defendant. However, under pre-existing settled law, the apportionment of liability among multiple defendants in negligence cases and multiple defendants in strict liability cases has been understood as distinct.

In *Kimco Development Corp. v. Michael D's Carpet Outlets*, 637 A.2d 603 (Pa. 1993), this Court declined to incorporate comparative negligence concepts into strict liability cases, noting:

> Throughout the development of § 402A liability, we have been adamant that negligence concepts have no place in a strict liability action. *See, e.g., . . . McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975) (initially to apply a theory of comparative negligence to an area of the law in which liability is not premised on negligence seems particularly inappropriate); *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975) (the crucial difference between strict liability and negligence is that the existence of due care, whether on the part of the seller or the consumer, is irrelevant).

*Kimco*, 637 A.2d at 606.

---

[16] The parties did not seek review of the Superior Court's holding that Section 7102(a.1)(2) abolished joint liability in strict liability cases and imposed several liability, and we did not grant allowance of appeal on that issue.

Section 7102(a) sets forth the general rule applicable to "actions brought to recover damages for negligence" for apportionment of liability based on a jury's assessment of the relative "causal negligence" of a plaintiff and defendant. 42 Pa.C.S. § 7102(a). In Section 7102(a.1)(1), addressing apportionment among multiple defendants, the legislature did not provide any basis for a jury to determine a defendant's "apportioned amount" liability. *Id.* § 7102(a.1)(1). Liability is defined as "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment[.]" BLACK'S LAW DICTIONARY (11th ed. 2019). In strict liability actions, each defendant is "wholly liable" for the harm. *See Walton*, 610 A.2d at 462. As each strictly liable defendant is entirely legally responsible for the harm, the ratio of the amount of one defendant's liability to the liability of all defendants is 100%. Due to this, we have held that liability must be equally apportioned among strictly liable joint tortfeasors. *See Baker*, 755 A.2d at 669. There is nothing in the Act that suggests that the method of determining the ratio of liability for strict liability cases must be the same as specifically described for negligence cases alone in the prior version of Section 7102. It does not follow, as concluded by the Superior Court, that the inclusion of strict liability cases in Section 7102(a.1)(1) evidenced an intent to treat such cases the same as negligence case in all respects. It is clear that in both types of cases the Section directs that the ratio of damages must be determined among defendants and that, pursuant to Section 7102(a.1)(2) such proportions will not be subject to joint liability exposure. However, the Section 7102(a.1)(1) is silent about the basis for determining those proportions. It is an unwarranted leap to conclude that the legislature intended to apportion the relative liability of defendants in strict liability cases in the same manner specifically described for negligence cases alone in the prior section. This is especially

true given the inapplicability of regular negligence notions attendant to the cause of action.

> [W]e explain: (1) that the strict liability cause of action sounds in tort; (2) that the notion of "defective condition unreasonably dangerous" is the normative principle of the strict liability cause of action, which reflects the standard of review or application of the tort, and its history; and (3) the appropriate interplay of principle and evidence.
>
> It is important to remember that the action sounds in tort, *i.e.* the cause involves breach of duties "imposed by law as a matter of social policy," rather than contract, *i.e.,* the cause involves breach of duties "imposed by mutual consensus agreements between particular individuals." *Ash,* 932 A.2d at 884; *see* Restatement (2d) of Torts § 402A(2). Nevertheless, the tortious conduct at issue is not the same as that found in traditional claims of negligence and commonly associated with the more colloquial notion of "fault." In this sense, introducing a colloquial notion of "fault" into the conversation relating to strict product liability in tort detracts from the precision required to keep this legal proposition within rational bounds.

*Tincher*, 104 A.3d at 400. Absent a definitive directive by the legislature, we do not interpret the Act as altering the pre-existing per capita method of apportioning liability among defendants in strict liability cases.

Additionally, even if the Superior Court's conclusion regarding the legislature's intent is considered, in the instant case it would lead to a result impossible of execution. The Statutory Construction Act directs us to presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1); *see also Hous. Auth. of County of Chester v. Pa. State Civil Serv. Comm'n*, 730 A.2d 935, 946 (Pa. 1999) ("The first principle of statutory construction is that courts will not interpret legislative enactments in a manner which imputes absurdity to the legislative enactment").

We recently applied the "impossible of execution" presumption in *Hudson v. Pennsylvania Board of Probation & Parole*, 204 A.3d 392 (Pa. 2019). In *Hudson*, this Court rejected the appellant's argument that parole eligibility of no greater than one-half of the mandatory life sentence must attach to a sentence for second-degree murder, even though 18 Pa.C.S. § 1102(b) does not specify a minimum sentence for second-degree murder. *Hudson*, 204 A.3d at 397. The *Hudson* Court explained that the appellant's position "would be 'impossible of execution' because a sentencing court cannot know, at the time of sentencing, the number of years the defendant will continue to live. Thus, the court cannot ascertain a minimum term of years as required by paragraph [42 Pa.C.S. § 9756](b)(1)." *Id.* Further, we rejected the appellant's contention that sentencing courts should always impose a minimum sentence of one day when imposing life imprisonment as unreasonable because the legislature did not specify a minimum parole date. *Id.* Accordingly, we held the legislature did not intend to require parole after a minimum sentence in cases of second-degree murder. *Id.* at 398.

Similarly, the Superior Court's interpretation of the Act as requiring a factfinder to allocate liability between joint tortfeasors in all cases, including strict liability cases, is impossible of execution in asbestos cases. Lung cancer resulting from asbestos inhalation is inherently a single, indivisible injury that is incapable of being apportioned in a rational manner because the individual contributions to the plaintiff's total dose of asbestos are impossible to determine. *See Martin*, 528 A.2d at 949. Consequently, when two or more actors combine to cause an indivisible injury, and each is a substantial contributing factor, each actor is the legal cause of the entirety of the harm. *See id.* Because it is impossible to determine which actor caused the harm, it follows that it is impossible to apportion the amount of each defendant's liability on a percentage basis.

In this regard, we find *Martin* instructive. In *Martin*, this Court held the trial court erred in instructing the jury to apportion damages between defendant's asbestos products and plaintiff's cigarette smoking because there was no evidence upon which the jury could apportion causation. *Id.* at 948. Relying on Section 433A(1)(b) of the Restatement (Second) of Torts, this Court noted the plaintiff's single harm was his decreased lung function. *Id.* at 949. However, there was no evidence presented that would permit the jury to assign a percentage contribution to asbestosis caused by asbestos exposure versus emphysema caused by cigarette smoking. *Id.* at 950. This Court explained that two of the three experts who opined on causation testified that a contribution determination was not possible. *Id.* at 949-950. Accordingly, this Court reasoned that a jury cannot be instructed to apportion damages in contravention of the medical experts' testimony that they could not determine specific contribution to an indivisible injury. *Id.* at 950 ("The causes of disability in this case do not lend themselves to separation by lay-persons on any reasonable basis"). The *Martin* Court concluded "common sense and common experience possessed by a jury do not serve as substitutes for expert guidance, and it follows that any apportionment by the jury in this case was a result of speculation and conjecture and hence, improper. 'Rough approximation' is no substitute for justice."[17] *Id.* (footnotes omitted).

In this case, the medical causation experts likewise agreed there is no scientific basis to determine which asbestos-containing product caused Mr. Roverano's lung cancer. *See* N.T., 4/7/16, at 73 (Dr. Frank); N.T., 4/5/16, at 50 (Dr. Gelfand); N.T., 4/7/16,

---

[17] Chief Justice Saylor advocates a risk-based assessment of comparative responsibility based, in part, on his view that asbestos litigation is "at best" a "rough approximation." Dissenting Op. at 4. However, the burden of proof is not "rough approximation," and litigants present expert testimony to guide the jury's determination of causation. Because the consensus of the expert testimony in this case is that causation cannot be apportioned, a jury's risk-based assessment would be conjecture.

at 38-39 (Dr. Pope); N.T., 4/2/16, at 132 (Dr. Crapo). Instead, all the exposures to asbestos combined to cause Mr. Roverano's lung cancer, and each product that increased Mr. Roverano's cumulative asbestos exposure was a cause. *See* N.T., 4/7/16, at 74; N.T., 4/5/16, at 53-55; N.T., 4/7/16, at 38-39; N.T., 4/2/16, at 130. Thus, in asbestos cases where expert testimony is necessary to establish causation, and those experts agree there is no scientific or medical basis to apportion liability, it is impossible to instruct a jury to apportion liability for an indivisible injury on a percentage basis. *See Martin*, 528 A.2d at 950; *see also* Pa.R.E. 702 (providing expert testimony is admissible if an expert's knowledge is (a) "beyond that possessed by the average layperson;" and (b) will help the factfinder "to understand the evidence or to determine a fact in issue").[18] Accordingly, the Superior Court's interpretation of the Fair Share Act as requiring the factfinder to engage in a percentage allocation of liability is unreasonable and impossible of execution. Pursuant to the Statutory Construction Act, we must presume the legislature did not intend such a result. *See* 1 Pa.C.S. § 1922(1).

Our reading of the plain language of Section 7102(a.1)(1) is supported by the plain language of Section 7102(c.2), which provides:

> (c.2) **Savings provisions.**--Nothing in this section shall be construed in any way to create, abolish or modify a cause of action or to limit a party's right to join another potentially responsible party.

42 Pa.C.S. § 7102(c.2). In Pennsylvania, the strict liability cause of action recognizes that "a person or entity engaged in the business of selling a product has a duty to make and/or market the product—which 'is expected to and does reach the user or consumer

---

[18] Additionally, because there is no generally accepted medical basis to apportion liability for an indivisible injury caused by asbestos exposure, it is unlikely that an expert opinion on this basis would meet the test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), or that an expert witness offering such an opinion would qualify under Pa.R.E. 702(c).

without substantial change in the condition in which it is sold'—free from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.'" *Tincher*, 104 A.3d at 383. In strict liability actions, "the tortious conduct at issue is not the same as that found in traditional claims of negligence and commonly associated with the more colloquial notion of 'fault.' In this sense, introducing a colloquial notion of 'fault' into the conversation relating to strict product liability in tort detracts from the precision required to keep this legal proposition within rational bounds."[19] *Id.* at 400.

Section 7102(c.2) plainly confirms that the legislature did not intend Section 7102(a.1)(1) to modify the strict liability cause of action by introducing an element of fault or responsibility into the allocation of liability. *See Baker*, 755 A.2d at 669. The Superior Court's construction of Section 7102(a.1)(1) as requiring the jury to apportion damages on a percentage basis in strict liability is contrary to the legislature's express, comprehensive directive that "[n]othing in this section shall be construed in any way to . . . modify a cause of action[.]" 42 Pa.C.S. § 7102(c.2). Additionally, the Superior Court's interpretation creates a conflict between Sections 7102(a.1)(1) and 7102(c.2), and the Statutory Construction Act dictates that Section 7102(c.2) prevails as the last clause in order. *See* 1 Pa.C.S. § 1934 (providing when clauses in a statute "are irreconcilable, the clause last in order of date or position shall prevail").

Accordingly, the plain language of the Fair Share Act indicates that liability is apportioned equally among strictly liable joint tortfeasors, and we reverse the Superior Court.

---

[19] Any overlap between Section 7102(a.1)(1) and the prior Section 7102(b) does not support the inclusion of the strict liability cause of action in the Fair Share Act because the strict liability cause of action arose from Pennsylvania's adoption of Section 402(A) of the Restatement (Second) of Torts. As an independent cause of action from the former comparative negligence in Section 7102(b), strict liability is clearly preserved by the savings provision of Section 7102(c.2).

IV.

We next consider whether the Fair Share Act requires that the jury consider evidence of settlements with bankrupt entities when apportioning liability under Section 7102(a.2), which provides:

> **(a.2) Apportionment of responsibility among certain nonparties and effect.--** For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party. A person whose liability may be determined pursuant to this section does not include an employer to the extent that the employer is granted immunity from liability or suit pursuant to the act of June 2, 1915 (P.L. 736, No. 338), known as the Workers' Compensation Act. An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose. Nothing in this section shall affect the admissibility or nonadmissibility of evidence regarding releases, settlements, offers to compromise or compromises as set forth in the Pennsylvania Rules of Evidence. Nothing in this section shall affect the rules of joinder of parties as set forth in the Pennsylvania Rules of Civil Procedure.

42 Pa.C.S § 7102(a.2).

A.

The Roveranos highlight that statutes are not to be "'presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.'" Roveranos' Brief at 32 (citing *Birth Ctr. v. St. Paul Cos.*, 787 A.2d 376, 387 (Pa. 2001)). They continue that the General Assembly is presumed to have known that the case law in Pennsylvania "prohibited the apportionment of liability to bankrupt entities." *Id.* at 33. However, the Act does not use the term "bankruptcy" or any derivation thereof. Consequently, they hold the view that the exemption of bankrupt entities on verdict sheets remains. *Id.* The Roveranos also posit

that because Section 7102(a.2) states, "[n]othing in this section shall affect the rules of joinder of parties as set forth in Pennsylvania Rules of Civil Procedure[,]" the legislature could not have intended that bankrupt entities be considered. *See id.* at 33; *accord* 42 Pa.C.S. § 7102(a.2).

The Roveranos look to subsequent proposed legislation to aid in interpreting the Act with respect to bankrupt entities. They note that the legislature had proposed House Bill No.1150 and House Bill No. 238, respectively, neither of which were enacted. Each proposal was intended to specifically address apportioning liability to bankruptcy trusts. The Roveranos contend that there would have been no need to propose legislation regarding bankruptcy trusts if the Act already applied to them. Roveranos' Brief at 33-34.

The Roveranos further argue that the Superior Court's decision conflicts with the Uniform Contribution Among Tortfeasors Act (UCATA)[20] and this Court's decision in *Baker*. *See* Roveranos' Brief at 34. In that case, the Bakers filed a strict liability action against a number of manufacturers and sellers of asbestos products. Mr. Baker was awarded $2,000,000.00 for his contraction of malignant mesothelioma, and Mrs. Baker was awarded $200,000.00 for her loss of consortium claim. Prior to the liability stage of proceedings, the Bakers settled with four defendants. *Baker*, 755 A.2d at 665. The joint tortfeasor agreements with three of the defendants were *pro rata* releases, while their agreement with the Manville Personal Injury Settlement Trust (Manville Trust) was a *pro tanto* release. *Id.* at 666; *see id.* at n. 1 (explaining when a plaintiff signs a *pro rata* release with a settling defendant, "the plaintiff's ultimate recovery against the nonsettling tortfeasors is the total award of damages reduced by the settling party's allocated share

---

[20] The UCATA provides, in relevant part, that a release by an injured person of a joint tortfeasor "does not discharge the other tortfeasors, unless the release so provides, but reduces the claim against other tortfeasors in the amount of consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." 42 Pa.C.S. § 8326.

of the liability[;]" however, if the plaintiff signs a *pro tanto* release "then the plaintiff's ultimate recovery against the nonsettling joint tortfeasors is the total award of damages reduced by the amount of consideration paid for the release."). This Court considered to what extent the nonsettling defendant was entitled to have the damages set-off based on the out-of-court settlements and concluded that, applying Section 8326 of the UCATA, the defendant "should receive a *pro tanto*, rather than a *pro rata*, set-off[,]" with respect to the Manville Trust. *Id.* at 668. However, the nonsettling defendant's set-off was *pro rata* with respect to the three other settling defendants because each of their releases so provided. *See id.* at 672.

The Roveranos contend that because, in their case, the releases with the bankrupt entities were *pro tanto* settlements, it would not be appropriate for the jury to consider evidence of these settlements when it apportions liability. Roveranos' Brief at 35-36. Any reduction of the amount awarded to them, they contend, should be reduced only by the amount they actually received from the bankruptcy trusts. *Id.*

Finally, the Roveranos argue that public policy favors precluding bankrupt entities from the verdict sheet. *See id.* at 36-37. In their view, the interpretation advanced by the Superior Court benefits the tortfeasor and simultaneously "penalizes the plaintiff by depriving the plaintiff of a portion of the verdict." *Id.* at 36-37.

In their amici brief, The Pennsylvania Association for Justice and the American Association for Justice agree that public policy disfavors allowing bankruptcy trusts to be included on a verdict sheet. *See* Amici Brief at 10-12. They further agree with the Roveranos' position that because the Act does not explicitly identify bankrupt entities in its text, they remain excluded from verdict sheets. *See id.* at 7-9. Amici provide an additional argument, not advanced by the Roveranos, that the automatic stay and

discharge provisions at 11 U.S.C. § 362 of the Bankruptcy Code prohibits bankrupt entities from the imposition of liability. *See id.* at 9-10.

B.

Appellees rely principally on the plain language of the Act to support the position that the Act requires the jury to consider the liability of non-party tortfeasors, regardless of whether or not the entities are bankrupt. *See* Brand's Brief at 47; Crane's Brief at 40-42. They acknowledge the Roveranos' position that Section 7102(a.2) does not include the word "bankruptcy;" however, they highlight that it applies to "any defendant or other person who has entered into a release with the plaintiff . . . ." Brand's Brief at 44-45; Crane's Brief at 41-43. Further, the Act includes a single exception to be excluded from the verdict sheet for employers based on workers' compensation immunity. 42 Pa.C.S. § 7102(a.2). The argument continues that had the General Assembly intended for bankrupt entities to be excluded, it would have so provided. *See* Crane's Brief at 42.

Moreover, Appellees contend that the reasoning underlying the exclusion of bankrupt entities on the verdict sheet is no longer sound in light of the Fair Share Act. Specifically, under the Comparative Negligence Act that preceded the Fair Share Act, if bankrupt entities were permitted on the verdict sheet, they would be considered joint tortfeasors against whom other defendants could seek contribution. Brand's Brief at 46; Crane's Brief at 44. However, the automatic stay provision of the federal Bankruptcy Code would prohibit the parties from seeking contribution of the bankrupt entities. Brand's Brief at 46; Crane's Brief at 44. Under the Fair Share Act, conversely, joint and several liability is abolished in most cases, and Section 7102(a.2) expressly provides that the inclusion of nonparties on the verdict sheet is "[f]or purposes of apportioning liability only," and "is not admissible or relied upon in any other action or proceeding for any purpose." *See* Brand's Brief at 46-47; Crane's Brief at 44. Accordingly, they argue the bankrupt

entities will not be subject to liability nor will their presence on the verdict sheet violate the Bankruptcy Code.[21] Likewise, because the Act largely abolishes joint and several liability except in certain enumerated circumstances, the UCATA does not apply and is not inconsistent with application of the Fair Share Act.[22] *See* Brand's Brief at 49-56; Crane's Brief at 48-49.

With respect to the Roveranos' reliance on subsequent, proposed, and unenacted legislation, Appellees reiterate that consideration of this is irrelevant because the bills were not subject to a vote. Brand's Brief at 48-49; Crane's Brief at 47-48. Countering the Roveranos' position that the Superior Court's construction of the Act is contrary to public policy, Appellees assert that the passage of the Act signals a deliberate policy choice on the part of the legislature to ensure defendants are not obligated to pay for more than their own share of liability.[23] Brand's Brief at 56-57; Crane's Brief at 49-55.

---

[21] Appellees contest that Section 7102(a.2)'s language that provides, "[n]othing in this section shall affect the rules of joinder of parties as set forth in the Pennsylvania Rules of Civil Procedure[,]"42 Pa.C.S. § 7102(a.2), supports the Roveranos' position because including the entities on the verdict sheet does not require that the bankrupt entities be joined as codefendants. Crane's Brief at 48.

[22] In their reply brief, the Roveranos maintain that bankruptcy trusts are not permitted on verdict sheets contending that allowing consideration would obligate the trusts to respond to discovery requests, appear at trial, and participate in numerous actions in the Commonwealth thus undermining the policy underlying the federal stay provision of the Bankruptcy Code. Reply Brief at 4-5.

[23] Brand additionally posits that there was sufficient evidence adduced for the bankrupt entities to be included on the verdict sheet based on admissions by the Roveranos of settlements from seven bankruptcy trusts. Brand's Brief at 58-59. Alternatively, Brand argues if bankrupt trusts are not permitted on verdict sheets under the Act, the trial court should mold the verdict to account for settlements received from bankrupt trusts. *Id.* at 60-62.

For their part, amici argue that the Fair Share Act must be read to include consideration of settlements by bankruptcy trusts to have "any semblance of embodying the 'Fair Share' concept." Amici Curiae Brief in favor of Appellees at 16. Specifically, they highlight that receiving compensation from a bankruptcy trust is a non-adversarial process in which claimants are compensated more quickly than through traditional

C.

Upon review, we conclude that bankruptcy trusts that are joined as third-party defendants or that have entered into a release with the plaintiff may be included on the verdict sheet upon submission of "appropriate requests and proofs." 42 Pa.C.S. § 7102(a.2). Because the trial court incorrectly excluded all such entities, we must remand for a new trial on apportionment.

For context, a number of asbestos manufacturers and distributors, beginning with The Johns-Manville Corporation, have exited the tort system by reorganizing under Chapter 11 of the Bankruptcy Code. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71, 83 (Bankr. W.D.N.C. 2014); Elihu Inselbuch et al., *The Effrontery of the Asbestos Trust Transparency Legislation Efforts*, MEALEY'S LITIGATION REPORT: ASBESTOS, vol. 28, #2, Feb. 20, 2013, at 4. The purpose of Manville's bankruptcy filing was to confront the threat of asbestos-related litigation and the refusal of Manville's insurance carriers to pay out asbestos claims. *See In re Johns-Manville Corp.*, 36 B.R. 743, 750 (Bankr. S.D.N.Y. 1984). The Manville bankruptcy case confronted how to deal with future claims of asbestos victims who had yet to manifest an asbestos-related disease. *Id.* at 745-46. Instead of discharging those future claims, "the Manville plan of reorganization pioneered the use of a trust dedicated to the resolution and payment of asbestos claims." Inselbuch, *supra*, at 4. Further, under the Manville plan, all future asbestos personal injury claims

---

litigation, and often, from a number of trust entities. *See id.* at 12-15. Without allowing juries to consider these other sources of asbestos exposure, defendants are disproportionately held liable for the harm they caused. *Id.* at 17-19. Amici also advocate for this Court to "require asbestos plaintiffs to file and disclose all available trust claims before trial, and preferably before the end of discovery." *Id.* 25. This is to prevent claimant/plaintiffs from "strategically delaying the filing of trust claims until after trial" in order to keep this information from the jury when it apportions liability. *See id.* at 19. The Roveranos dispute that such manipulation is widespread and contend that victims of asbestos exposure often go uncompensated and "*always* end up undercompensated with respect to payments made by bankruptcy trusts." Reply Brief at 6 (emphasis in original).

were redirected from the reorganized company to the trust by a "channeling injunction." *Id.* This ensured some recovery for future claimants, albeit not the full value of their claim in the tort system, while also permitting Manville to continue its business operations by shielding it from future asbestos litigation.

The United States Congress enacted Bankruptcy Code Section 524(g), 11 U.S.C. § 524(g), "which statutorily validates the trust and channeling injunction mechanisms pioneered in the *Manville* case." *Id.* Under this statutory scheme, a bankruptcy court's confirmation of a Chapter 11 asbestos debtor's reorganization plan creates a trust for the payment of the debtor's present and future liability and an injunction that channels post-confirmation claims to the trust.[24] *Id.* This enables the Chapter 11 debtor to reorganize and remain commercially viable while the trust administers asbestos personal injury claims. *Id.* at 4-5. A "trust distribution procedures" (TDP) document, which the bankruptcy court has approved, controls the administration of the trust. *Id.* at 5. "The trust has fixed assets that will be insufficient to pay the full historic settlement value of all claims; it therefore sets a payment percentage, and each present and future claimant is paid the liquidated value of his or her claim discounted by the payment percentage." *Id.*

---

[24] "Confirmation of a bankruptcy plan grants the debtor a discharge that replaces the automatic stay with a permanent injunction pursuant to § 524 of the Bankruptcy Code. . . . [O]nce a plan has been confirmed, holders of nondischargeable debts can generally pursue collection unless the plan has provided otherwise or unless the court otherwise orders." *United States v. White*, 466 F.3d 1241, 1246 (11th Cir. 2006); *see also* 11 U.S.C. § 362 (providing the automatic stay remains until discharge); 11 U.S.C. § 1141(d)(1)(A) (stating confirmation of a plan discharges debtor's pre-confirmation debt).

Because the bankruptcy trusts involved in this case are the result of Chapter 11 debtors obtaining a discharge in bankruptcy, *Ottavio* and *Ball* do not control this case. The *Ottavio* Court held that the automatic stay precludes an apportionment of liability. *Ottavio*, 617 A.2d at 293. Further, *Ottavio* noted "[n]othing precludes the solvent manufacturers in this case from obtaining contribution from the bankrupts when (and if) they emerge from reorganization proceedings." *Id.* The *Ball* Court based its decision entirely on the reasoning of *Ottavio*. *Ball*, 625 A.2d at 660. In this case, the bankruptcy trusts are not protected by the automatic stay.

Against this background, Crane and Brand contend that Section 7102(a.2) of the Fair Share Act permits a court to direct the jury to apportion liability to asbestos bankruptcy trusts. The pertinent language of Section 7102(a.2) provides:

> For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party. . . . An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose.

42 Pa.C.S. § 7102(a.2). From its text, Section 7102(a.2) contemplates apportioning liability to two entities: (1) defendants; or (2) any non-party "who has entered into a release with the plaintiff with respect to the action." *Id.* Here, both categories apply as Crane filed a joinder complaint against Johns-Manville/Manville Personal Injury Trust, and additionally the Roveranos acknowledged obtaining payments from certain bankruptcy trusts and entered into releases as a condition of receiving those payments. *See, e.g.*, Roverano's Brief at App. H, Release & Indem. Agreement of Armstrong World Indus., Inc. Asbestos Pers. Injury Settlement Trust, 12/21/15, at 1-2; Roveranos' Br. in Opp'n to Brand's Mot. for Post-Trial Relief at 35, Ex. K (listing bankruptcy settlements).

Under Section 7102(a.2), the trial court should have included Manville on the verdict sheet for the limited purpose of determining liability because Crane joined Manville as an additional defendant for the sole purpose of allocating liability pursuant to the Manville Personal Injury Settlement Trust (Manville Trust) TDP. Crane's Joinder Compl., 1/7/16, at ¶ 9. The TDP of the Manville Trust, from which the Roveranos acknowledge receiving payment, provides that the trust consents to inclusion on a verdict sheet. *See id.* at Ex. D, January 2012 Revision to 2002 Trust Distribution Process, at p. 22, § I(1)(c). Specifically, it states "[t]hird-party claims may be asserted against the Trust for the sole

purpose of listing the Trust on a verdict form or otherwise as necessary to ensure that any verdict reduction in respect of the Manville (or Trust) liability share is made pursuant to applicable law." *Id.* The TDP further provides that the Manville Trust cannot be required to enter an appearance, submit to discovery, or be subject to execution on any judgment. *Id.* It also states that the Manville Trust "shall be treated in litigation between Beneficiaries of the Trust as a legally responsible tortfeasor under applicable law, without the introduction of further proof." *Id.* at p.22, § I(1)(d). Accordingly, the trial court erred in refusing to include the Manville Trust on the verdict sheet for the limited purpose of determining liability because Manville was joined as a defendant. *See* 42 Pa.C.S. § 7102(a.2).

Additionally, Section 7102(a.2) permits a factfinder to apportion liability to those asbestos bankruptcy trusts that have entered into releases with the Roveranos, but were not named defendants.[25] The Roveranos obtained payment from the asbestos bankruptcy trusts of Armstrong World Industries, B&W, Celotex, Fibreboard, Owens-Corning, and U.S. Gypsum. *See* Roveranos' Br. in Opp'n to Brand's Mot. for Post-Trial Relief at 35, Ex. K (listing bankruptcy settlements). Under Section 7102(a.2), the question of their liability "shall be transmitted to the trier of fact upon appropriate requests and proofs by any party." 42 Pa.C.S. § 7102(a.2). Here, Crane, Brand, and Hajoca requested that the trial court include the bankrupt entities on the verdict sheet in their motions in limine. However, the trial court did not evaluate whether the proofs submitted by Crane,

---

[25] Because the underlying tortfeasors reorganized under Chapter 11, the Roveranos filed claims with the successor asbestos trusts, as required by the Section 524(g) channeling injunctions. Thus, the underlying reorganized companies, i.e., the tortfeasors, have not "entered into a release" with the Roveranos and consequently cannot be apportioned liability because they do not meet the conditions of Section 7102(a.2). Instead, it is the asbestos bankruptcy trusts that have entered into releases with the Roveranos and could potentially be included on the verdict sheet for purposes of apportioning liability.

Brand, and Hajoca were sufficient to present the question of the bankrupt entities' liability to the jury under Section 7102(a.2).[26] Instead, the trial court granted the Roveranos' motion in limine based on *Ottavio* and *Ball* and basic fairness considerations. *See* N.T., 4/5/16, at 19-20; Trial Ct. Op., 7/27/16, at 11. In doing so, the trial court erred in refusing to apply the Fair Share Act to the motions in limine to include the settled bankruptcy trusts on the verdict sheet.[27] Accordingly, we remand to the trial court for a new trial on apportionment. The trial court may determine, on remand, whether or to what extent it may be appropriate for additional requests and proofs to be submitted, as well as determine the sufficiency of the submissions.

V.

For these reasons, the decision of the Superior Court is reversed in part and affirmed in part. We conclude liability must be apportioned on a per capita basis in strict liability asbestos cases. Further, we conclude the Fair Share Act permits a trial court to

---

[26] As explained, Hajoca and Brand filed their motions in limine on March 30, 2016 and April 5, 2016, respectively, after discovery had closed. The trial court granted the Roveranos' motion in limine to exclude third-party bankrupt entities from the verdict sheet on April 5, 2016, which was the day the jury trial commenced in this case. Accordingly, the trial court error was not in making rulings that prevented Appellees from obtaining the information relative to the appropriate requests and proofs. Rather, the error was in failing to apply the Act and evaluate the motions in limine to assess whether the parties had submitted appropriate requests and proofs to compel inclusion of the third-party bankrupt entities on the verdict sheet.

[27] We acknowledge these asbestos bankruptcy trusts are subject to an injunction, which "enjoin[s] entities from taking legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust . . ., except such legal actions as are expressly allowed by the injunction, the confirmation order, or the plan of reorganization." 11 U.S.C. § 524(g)(1)(B). However, in Pennsylvania, Section 7102(a.2) specifically provides that "[a]n attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose." 42 Pa.C.S. § 7102(a.2). Additionally, any due process issues, among other concerns, are outside the scope of the issue upon which we granted allowance of appeal and may be raised in future cases.

transmit to the factfinder, upon appropriate requests and proofs, the question of the liability of both a bankruptcy trust that was joined as an additional defendant and a nonparty bankruptcy trust that has entered into a release with the plaintiff. Accordingly, we remand to the trial court for further proceedings consistent with this opinion.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion, and Chief Justice Saylor joins Part IV of the opinion.

Justice Wecht files a concurring opinion.

Chief Justice Saylor files a concurring and dissenting opinion.